NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 30, 2015[*]
Decided March 30, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 14-3720

| | |
|---|---|
| WILLIE HENDERSON, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of |
| | Illinois, Eastern Division. |
|     *v.* | |
| | No. 14 C 239 |
| STEVE BRYANT, et al., | |
|     *Defendants-Appellees*. | Rubén Castillo, |
| | *Chief Judge.* |

**O R D E R**

Willie Henderson, designated a sexually violent person under Illinois' Sexually Violent Persons Commitment Act, 725 ILCS 207/1–99, has been civilly committed to a treatment facility for much of the past 15 years. In 2013 Henderson was briefly released from physical custody and placed on conditional release, during which he was required to abide by 55 separate "Conditions of Release." He was recommitted to the state's

---

[*] The defendants were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that the case is appropriate for summary disposition. *See* Fed. R. App. P. 34(a)(2).

custody three months later. In this lawsuit under 42 U.S.C. § 1983, he alleges that many of the conditions violated his constitutional rights, that his conditional-release agent and others abused him, and that he has been unlawfully recommitted. The district court dismissed Henderson's case for lack of a valid claim. We vacate the dismissal in part because the court should have allowed one aspect of the case to move forward.

The sequence of events begins in July 2013, when Henderson was placed on conditional release. *See* 725 ILCS § 207/40(3)–(5). Among the 55 conditions of release, Henderson was ordered that he must: "[r]efrain from entering into a relationship of any type without written approval . . . any unauthorized relationships will be terminated immediately, including but not limited to relationships with family members;" "refrain from watching out any/all windows of residence for sexual gratification or any other reason;" "not purchase any items of any kind unless authorized;" "[r]efrain from entering anyone's motor vehicle and/or travelling with anyone in their vehicle without prior identification and approval;" "[n]ot establish a dating, intimate, or sexual relationship with a person" without prior approval; "[n]ot have photos or pictures of any child including your own in your home or in your control" without approval; "[n]either possess or have under your control any material that is pornographic, sexually oriented, or sexually stimulating, or that depicts or alludes to adult sexual activity or depicts minors under the age of 18, including but not limited to visual, auditory, telephonic, electronic media, or any matter obtained through access to the internet, access to any computer or material linked to computer access use;" and "[r]efrain from owning or having in your possession any animal of any type . . . refrain from babysitting or watching another person's pet or animal at any time."

After three months his conditional release was revoked and Henderson was recommitted (presumably pursuant to a state court order for violating a condition, *see id.* § 207/40(4)), precipitating this suit. He sued Steve Bryant, the director of Liberty Healthcare (the corporation that operates the conditional-release program for sexually violent persons in Illinois), Nathan Rosato, his conditional-release agent, and Rhonda Meacham, his therapist. Henderson contends generally that the terms of conditional release are overbroad, the defendants enforced those terms unreasonably, and he should not have been recommitted. He elaborates that, while he was on release, the defendants prevented him from contacting his family and confiscated his family pictures; Rosato entered with his own key and searched Henderson's apartment unannounced while he was sleeping at night or showering; and both Rosato and Meacham verbally abused him in public.

The district court recruited counsel to assist Henderson in drafting an amended complaint but eventually dismissed the case. Counsel obtained a copy of the terms of Henderson's conditional release. In addition to the restrictions listed above, the terms permitted the release agent to "conduct random home visits including searches of the premises, person and personal property" of Henderson. Because the terms authorized random searches, the attorney evidently believed that the way in which agent searched Henderson's home—entering and searching at night as Henderson slept or showered—was not constitutionally suspect. Apparently seeing no other claims to advance, he moved to withdraw.

Henderson opposed the motion. He argued that the attorney had focused on only one issue in his complaint and had ignored Henderson's claims regarding the constitutionality of many of the 55 conditions of release. The district court nonetheless granted the attorney's request, and after Henderson filed two amended complaints elaborating on his allegations, it dismissed the case. The district court stated only that the amended complaint "does not state a plausible, valid federal cause of action."

Henderson appeals, and we agree with him that the district court too hastily disposed of all his claims. As a general matter, "[c]ivil detainees 'are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.'" *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) (quoting *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982)). And in reviewing conditions of supervised release in federal criminal sentences, we have recently invalidated restrictions similar to some in this case, concluding that they were constitutionally vague and overbroad or infringe on protected speech. *See United States v. Adkins*, 743 F.3d 176, 193–96 (7th Cir. 2014); *United States v. Benhoff*, 755 F.3d 504, 506 (7th Cir. 2014); *United States v. Shannon*, 743 F.3d 496, 500–01 (7th Cir. 2014). Against this background, we consider Henderson's complaint and construe it liberally because he is pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). He appears to present four types of claims. We examine each possibility and conclude that one warrants a remand.

First, Henderson may be seeking release from civil commitment on the theory that his recommitment is based on his violation of *unconstitutional* terms of release; he may raise that claim for release for custody, however, only in a petition for a writ of habeas corpus, not in a § 1983 suit. *See Duncan v. Walker,* 533 U.S. 167, 176 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Although a court can recharacterize a civil-rights claim as a habeas petition, it should only do so where the complaint names the correct defendants and seeks the correct relief. *Glaus v. Anderson*, 408 F.3d 382, 388–90 (7th Cir. 2005).

Henderson has not named as a defendant the director of the detention facility—the proper respondent for a habeas petition—so this aspect of his complaint was rightly dismissed. If Henderson wishes to challenge his recommitment, he must file a habeas petition in a separate suit.

Second, Henderson may be seeking damages for having been recommitted based on the violation of release conditions that he contends are unconstitutional; this claim is also unavailable to him now. A successful damages claim would vitiate the basis for his commitment, and *Heck v. Humphrey*, 512 U.S. 477 (1994), bars civil damages actions where a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 486–87; *see Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000); *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1139-40 (9th Cir. 2005) (applying the rule of *Heck* to sexually violent civil detainees). Henderson must first have the custody invalidated, either in state proceedings or through a federal collateral attack under 28 U.S.C. § 2254, before he can refile those claims and proceed under § 1983. *See Heck*, 512 U.S. at 489–90.

Third, Henderson appears to want to protect himself from ever again becoming constrained by the restrictive conditions of release, but unless and until they are imposed on him again, that type of challenge is premature. *See United States v. McAllister*, 225 F.3d 982, 989–90 (8th Cir. 2000) (concluding that civilly committed person could not preliminarily challenge potential condition of release because it had not yet been imposed on him and it was unclear if he would ever be released from inpatient treatment). If Henderson were currently on parole or another form of supervised release, he could challenge the constitutionality of the conditions of release through a petition for a writ of habeas corpus. *See Williams v. Wisconsin*, 336 F.3d 576, 579–80 (7th Cir. 2003); *Drollinger v. Milligan*, 552 F.2d 1220, 1224–25 (7th Cir. 1977). But Henderson is no longer on conditional release and thus is not presently constrained by these conditions. The district court properly dismissed this part of Henderson's case.

Finally, Henderson appears to seek damages for having had to endure for three months the restrictive conditions of release (or abusive actions of the defendants) that did *not* lead to his recommitment but which he contends to have been unconstitutional. Because a successful damages action challenging those conditions or actions would not imply the invalidity of his current confinement, *Heck* does not bar a § 1983 claim challenging them. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *Simpson v. Nickel*, 450 F.3d 303, 307 (7th Cir. 2006); *DeWalt v. Carter*, 224 F.3d 607, 615–17 (7th Cir. 2000); *Carr v. O'Leary*, 167 F.3d 1124, 1127 (7th Cir. 1999). But these claims face a different hurdle:

insofar as they seek damages from the defendants for enforcing release conditions that a court specifically ordered, the defendants may be protected by absolute quasi-judicial immunity, which would bar any recovery. *See Richman v. Sheahan*, 270 F.3d 430, 436–38 (7th Cir. 2001); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1239 (7th Cir. 1986). But for two reasons it is too soon to treat these claims as blocked by absolute immunity. First, Henderson contends that, by barring all contact with family members and entering and searching his home at night while he slept, the defendants enforced the court's order in an unconstitutional manner; a claim that a defendant enforced a court order in an unconstitutional *manner* is not necessarily barred by quasi-judicial immunity. *See Richman*, 270 F.3d at 436. Second, the defendants have not yet been served and so have not yet advanced any defenses, which the district court should ordinarily consider in the first instance. Henderson may thus proceed on this one aspect of his case.

The judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED for proceedings consistent with this order. As it did before, the district court may consider recruiting experienced counsel to assist Henderson with these claims.