# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-60122

United States Court of Appeals
Fifth Circuit

**FILED**
August 10, 2018

Lyle W. Cayce
Clerk

RALPH ARNOLD SMITH, JR.,

      Plaintiff - Appellant

v.

JAMES M. HOOD, III, In his individual capacity; ALBERT LEE ABRAHAM, JR., Individually; CYNTHIA T. EUBANK, In her individual capacity; STANLEY ALEXANDER, In his individual capacity; ONETTA WHITLEY, In her individual capacity; RALPH E. CHAPMAN, Individually; H. SCOTT SPRAGINS, Individually; MEDICAL DOCTOR REB MCMICHAEL, In his individual capacity; LUKE SAVOIE, In his individual capacity; MEDICAL DOCTOR PAUL SCOTT MCGINNIS, In his individual capacity; JAMES G. CHASTAIN, In his individual capacity; THE MISSISSIPPI DEPARTMENT OF MENTAL HEALTH; JOHN DOES 1-20, Whose names and identities are unknown at this time; LAWRENCE JOHN TUCKER, JR., Individually, also known as Lucky,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, DENNIS, and COSTA, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Ralph Arnold Smith brought suit under 42 U.S.C. § 1983 and the Americans with Disabilities Act against various defendants for their conduct related to his involuntary civil commitment. The district court dismissed his

No. 17-60122

claims in their entirety.  He appeals.  We AFFIRM in part and VACATE and REMAND in part.

## I

In April 2012, Ralph Arnold Smith allegedly hired two people—Keaira Byrd and Derrick Lacy—to murder Lee Abraham, the attorney who had represented his ex-wife during their divorce proceedings.  *See generally Smith v. Chastain*, No. 3:14–v–334–WHB–RHW, 2015 WL 1206918, at *2 (S.D. Miss. Mar. 17, 2015).  Upon their arrival at Abraham's office, the two would-be assassins were shot by agents from the Mississippi Attorney General's Office.  Byrd was killed; Lacy was apprehended and led investigators to Smith.  Smith was arrested, and a grand jury returned two indictments against him, charging him, inter alia, with capital murder for Byrd's death and conspiracy to murder Abraham.

Smith asserted that he was suffering from a "major mental disease" that rendered him incompetent to stand trial.  The Leflore County Chancery Court ordered an initial evaluation of Smith's competency, and he was admitted to the forensic unit at the Mississippi State Hospital for evaluation.  After holding multiple hearings on Smith's competency, the Chancery Court ordered the State to initiate involuntary civil commitment proceedings.  The Chancery Court held two commitment hearings in December 2014 and January 2015 at which five doctors testified.  Finding that Smith was suffering from a psychotic mental disorder, the Chancery Court ordered that he be involuntarily civilly committed as an inpatient to the State Hospital.[1]

---

[1] In November 2016, Smith was ordered discharged from the State Hospital and placed on involuntary outpatient civil commitment.  Though no longer an inpatient, he remains involuntarily civilly committed and subject to conditions including wearing an electronic monitoring device, not accessing the internet or print media without prior approval, and participating in intensive psychiatric treatment.

No. 17-60122

Smith brought this 42 U.S.C. § 1983 and American with Disabilities Act (ADA) suit against the Mississippi Department of Mental Health (DMH), State Hospital doctors and personnel, state prosecutors, and four private attorneys (including Lee Abraham, the man he allegedly conspired to murder). All defendants except DMH were named in their individual capacities only. Smith sought damages against these defendants under § 1983; Title II of the ADA, 42 U.S.C. § 12131 et seq.; and Mississippi state law.[2] His claims were based in significant part on various allegations that defendants conspired to unlawfully civilly commit him against his will.

Defendants filed motions to dismiss all of Smith's claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), asserting that his claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and state sovereign, prosecutorial, and witness immunity.[3] The district court dismissed all of Smith's federal claims under *Heck* and state sovereign immunity and declined to exercise supplemental jurisdiction over his state law claims. Smith timely appeals.[4]

---

[2] Though Smith's complaint also alleged violations of 42 U.S.C. § 1985, he does not brief on appeal what these violations are or why they were wrongly dismissed; consequently, he has abandoned them. *See Willis v. Cleco Corp.*, 749 F.3d 314, 319 (5th Cir. 2014) (forfeiture where party does not brief "in any perceptible manner" how he is entitled to relief on his claims).

[3] Smith originally argued in his briefing on appeal that the district court erred by not entering default against defendant Abraham. Smith subsequently filed an unopposed motion to dismiss this issue, which we hereby grant.

[4] Pursuant to Federal Rule of Appellate Procedure 28(i), three of the private attorney defendants filed joinders to other defendants' briefs instead of independently arguing all of their defenses. Citing out-of-circuit precedent, Smith alleges that these three defendants have waived the right to adopt arguments in the other defendants' briefs because, in their Rule 28(i) letters, they "fail[] to explain how the co-appellees' arguments pertain to [them]." However, neither Rule 28 nor our case law requires appellees to explain in their filing why joinder is appropriate, simply requiring that the arguments adopted are "equally applicable" to both parties. *See United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir. 1991). We find that the arguments adopted are equally applicable, and that Smith's argument is consequently without merit.

No. 17-60122

## II

This court reviews the district court's dismissal of Smith's claims under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) de novo. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Hebert v. United States*, 53 F.3d 720, 722 (5th Cir. 1995). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead sufficient facts to state a plausible claim for relief. *Johnson v. Teva Pharm. USA, Inc.*, 785 F.3d 605, 610 (5th Cir. 2014).[5]

## III

The district court dismissed Smith's ADA claims against DMH as barred by the Eleventh Amendment.[6] Though the district court did not explicitly engage with the framework established in *United States v. Georgia*, 546 U.S. 151 (2006), we agree with its conclusion. To determine whether the ADA validly abrogates state sovereign immunity for claims brought under Title II, a court asks:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such conduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity in such contexts is nevertheless valid.

*Id.* at 159; *see also Wells v. Thaler*, 460 F. App'x 303 (5th Cir. 2012) (applying *Georgia*). Smith fails to apply or even reference this standard in his briefing,

---

[5] Smith contends that the district court erred by not accepting as true his allegation that his commitment was unlawful. However, this allegation is a legal conclusion entitled to no presumption of correctness. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) ("[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

[6] We note that the ADA cannot be assessed against an individual, *see Hay v. Thaler*, 470 F. App'x 411 n.19, 417 (5th Cir. 2012) (citing *Kemp v. Holder,* 610 F.3d 231, 234 (5th Cir. 2010)), and, in any event, Smith acknowledged that he abandoned his ADA claims against the individual defendants in proceedings before the district court. Therefore, we affirm the district court's dismissal of Smith's ADA claims against the individuals as well.

No. 17-60122

relying instead on the incorrect proposition that state sovereign immunity is validly abrogated for all Title II claims. Because Smith references only "wide-ranging and ongoing ADA violations" without further specifying the alleged violations, he does not identify on appeal "which aspects of the State's alleged conduct violated Title II," whether that alleged misconduct "also violated the Fourteenth Amendment," or whether, failing an alleged violation of the Fourteenth Amendment, "Congress's purported abrogation of sovereign immunity . . . is nevertheless valid." *Georgia*, 546 U.S. at 159. Accordingly, we affirm the district court's dismissal of Smith's ADA claims as barred by state sovereign immunity.

## IV

The district court dismissed Smith's remaining § 1983 claims as barred by the "favorable termination rule" established in *Heck v. Humphrey*, 512 U.S. 477 (1994). *See, e.g.*, *Ballard v. Burton*, 444 F.3d 391, 394 (5th Cir. 2006). In *Heck*, the Supreme Court held that a § 1983 claim for monetary damages is not cognizable when "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" unless that conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 487.

However, "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed in the absence of some other bar to the suit." *Heck*, 512 U.S. at 487. Determining whether a particular claim is barred by *Heck* is "analytical and fact-intensive" and requires the court to consider the specifics of the individual claim. *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008). We conduct this analysis by assessing whether a claim is "temporally and conceptually distinct" from the

related conviction and sentence. *See, e.g.*, *id.* at 498. We ask whether the claims are "necessarily inconsistent" with the conviction, or whether they can "coexist" with the conviction or sentence without "calling [it] into question." *Ballard*, 444 F.3d at 400–01. Claims that challenge conditions of confinement, but not the fact or length of the sentence, are not barred by *Heck*. *See Wilkinson v. Dotson*, 544 U.S. 74, 83–84 (2005) ("*Heck* uses the word 'sentence' to refer not to prison procedures, but to substantive determinations as to the length of confinement. . . . [T]his Court has repeatedly permitted prisoners to bring § 1983 actions challenging the conditions of their confinement.").

This circuit has thus far applied the *Heck* doctrine only to claims that implicate criminal convictions or sentences. In Smith's case, however, the district court concluded that there was "no reason not to" apply *Heck* to the civil commitment context, citing other courts that have done so. *See Huftile v. Vonseca*, 410 F.3d 1136 (9th Cir. 2005); *Henderson v. Bryant*, 606 F. App'x 301, 304 (7th Cir. 2015); *see also Allen v. Seiler*, No. 4:12-CV-414-Y, 2013 WL 357614, at *3 n.14 (N.D. Tex. Jan. 30, 2013) (collecting cases); MARTIN A. SCHWARTZ, SEC. 1983 LITIG. CLAIMS & DEFENSES § 10.07 (4th ed. 2017). In *Huftile*, the Ninth Circuit reasoned that *Heck* is equally applicable to people who are civilly committed because, as with a criminal sentence, the appropriate avenue to challenge the validity of civil confinement is through a habeas petition, not § 1983. *Huftile*, 410 F.3d at 1139–40. Because *Heck*'s holding was based at least in part on "prevent[ing] a person in custody from using § 1983 to circumvent the more stringent requirements for habeas corpus," the Ninth Circuit held that *Heck*'s reasoning therefore applies to the civil commitment context as well. *Id.* at 1139.

Though we note that the Ninth Circuit's and other courts' reasoning on this issue is persuasive, whether *Heck* extends to civil commitments is still a res nova question in this circuit. However, Smith's case is an unusual one

because the parties, including Smith, all assume that the *Heck* doctrine does apply in a civil commitment case. Smith, in a peculiar move on appeal, concedes that *Heck* should bar any claim that would challenge the validity of his underlying civil commitment. He argues only that some of his claims are viable because they are, allegedly, conceptually distinct from the commitment itself. As to some of these claims, however, we reject his argument that they are, in fact, distinct. Additionally, he fails to demonstrate a denial of a federal right with regards to other claims.

Though Smith alleges that he has brought conceptually distinct claims, some of his re-asserted arguments cannot, in fact, "coexist" with the existence vel non of his commitment. For instance, his claims that the defendants "pursued an involuntary inpatient civil commitment of Dr. Smith" and participated in civil commitment hearings to "wrongly and unlawfully seek the continuing vilification and incarceration of Dr. Smith" clearly challenge the legitimacy or length of his commitment itself. Similarly, Smith's claim that defendants failed to conduct periodic evaluations to determine whether continuing his commitment was justified is not distinct from the fact and duration of that commitment.

Smith also asserts that several other courses of conduct by defendants— placing him in the forensic unit at the State Hospital, failing to conduct a risk assessment, and allowing unlicensed State Hospital employees to provide psychological treatment—give rise to temporally and conceptually distinct § 1983 claims. However, it is not enough that these claims may be conceptually distinct; to plead a cognizable § 1983 claim, Smith must also allege a violation of his federal rights. *Cf. Heck*, 512 U.S. at 487 (an action that "will not demonstrate the invalidity of any outstanding criminal judgment . . . should be allowed to proceed *in the absence of some other bar to the suit*.") (emphasis added). With regards to these claims, Smith fails to assert any coherent legal

theory, either in his briefs or in his complaint below, explaining how these actions violated his federal rights.  Accordingly, he cannot demonstrate that the district court erred by dismissing these allegations for failure to state a claim under § 1983.  We affirm the district court's dismissal as to all of these claims.

Ultimately, we conclude that Smith raises only one § 1983 claim that is both conceptually distinct and asserts a denial of a constitutional right: his allegation that Defendants McMichael, Chastain, and Savoie confined him using leather and metal restraints in violation of his due process rights. "[L]iberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause . . . . This interest survives criminal conviction and incarceration.  Similarly, it must also survive involuntary commitment." *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) (citations omitted).  Smith's claim that those Defendants' use of restraints amounted to a due process violation is a challenge to the conditions of his confinement rather than the fact of his confinement itself, and is thus unquestionably not barred by *Heck. See Wilkinson*, 544 U.S. at 84.  As to this claim, the district court incorrectly concluded that "any award for damages under the theories advanced by the plaintiff would necessarily include a finding by this court that he is wrongfully held [at the State Hospital]." Accordingly, we find that the district court erred by dismissing this claim.

**\*\*\***

For these reasons, we AFFIRM IN PART as to the dismissal of the majority of Smith's claims. We VACATE and REMAND as to Smith's due process claim of unlawful bodily restraint against Defendants McMichael, Chastain, and Savoie. Additionally, we VACATE the district court's dismissal of Smith's pendant state law claim on this issue to permit the district court to

No. 17-60122

choose whether to exercise supplemental jurisdiction. *See generally* 28 U.S.C. § 1367; *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).