# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2020

Lyle W. Cayce
Clerk

No. 19-20445

DAVID L. LANCASTER,

> Plaintiff - Appellant,

v.

HARRIS COUNTY; KIM OGG, Harris County District Attorney; CHRIS DANIELS, Harris County District Clerk; UNKNOWN DEPUTIES, Harris County; UNKNOWN EMPLOYEES, Harris County Deputy District Clerks; ELIZABETH BARRON, Assistant District Attorney; KATHERYN SKAGERBERG, Assistant District Attorney; JAMES H. COX, II, Deputy; KEVIN TAYLOR, Deputy; UNKNOWN JUDGE, 247th District Court; JUDY WARNE, Judge, 257th District Court; JOHN SCHMUDE, Judge, 247th District Court; BARBARA LANCASTER; SHERMAN EAGLETON, Constable, Precinct 3 of Harris County,

> Defendants - Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-1936

Before SMITH, HO, and OLDHAM, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-20445

This is a case about abuse—of a woman and of the legal system. Plaintiff-Appellant David Lancaster contends that he is innocent of the former and a victim of the latter. The district court dismissed his complaint with prejudice. We affirm, albeit for slightly different reasons from those given by the district court.

I.

A.

In 2009, Lancaster lived with his then-wife, Barbara. In May of that year, Barbara complained to the Harris County Sheriff's Department that Lancaster assaulted her. The complaint led to a criminal charge, which was dropped in June.

Barbara subsequently decided to leave Lancaster. Throughout June and July 2009, deputies from the Harris County Sheriff's Office entered the Lancaster home with Barbara to collect her belongings. In Lancaster's view, these were lawless "raid[s]" of the "family home."

On August 25, with assistance from the Harris County District Attorney's Office, Barbara received a temporary protective order against Lancaster from a state court. The court set a hearing for September 9. A deputy constable received notice of the application for a protective order on August 28, a Friday. The deputy attempted to serve Lancaster with the notice on September 1, 2, and 3, and succeeded in doing so on September 4.

On September 9, Lancaster did not show up at the hearing. In his absence, the court entered a two-year protective order. Before the order expired, the DA's office charged Lancaster with two counts of criminal contempt for violating that order. Lancaster pleaded guilty.

In January 2013, Lancaster filed a bill of review of the 2009 protective order. "A bill of review is an equitable proceeding [available in Texas state

courts] to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or direct appeal." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 275 (Tex. 2012). Lancaster lost before the state trial court. The state appeals court disagreed, reversed, and partially remanded the case. After further proceedings, the trial court again ruled against Lancaster in 2017.

Lancaster chose to appeal again. In preparing for that appeal, he noticed that the online records of all protective orders before the trial court appeared to have vanished. This allegedly hampered his ability to expose a pattern of improper protective orders. Lancaster lost his second appeal.

### B.

In June 2018, Lancaster brought a six-count civil-rights complaint in federal district court, seeking money damages. He sued:

(1) the Harris County Sheriff's Office, its deputies, and his ex-wife for the 2009 "raid" of his home ("Claim 1" or the "Raid Claim");

(2) the judge that issued the 2009 protective order, for favoring the DA's position over his ("Claim 2" or the "Unfair-Judge Claim");

(3) Harris County, the Harris County DA's Office, an assistant district attorney ("ADA"), the Harris County District Clerk's Office, and Precinct 3 of the Harris County Constable's Office, along with one of its deputies, for the untimely delivery of notice of the 2009 protective order hearing ("Claim 3" or the "Late-Notice Claim");

(4) Harris County, the Harris County DA's Office, and some ADAs, for bringing the protective order application on behalf of Barbara Lancaster—an improper taking of sides by the state, apparently ("Claim 4" or the "Government-Taking-Sides Claim");

No. 19-20445

(5) the trial court judge that found against him in the bill of review proceedings, for refusing to vacate the 2009 protective order ("Claim 5" or the "Second Unfair-Judge Claim"); and

(6) Harris County, the Harris County District Clerk's Office, and certain Clerk's Office employees, for a conspiracy to cover up civil-rights violations by deleting online records ("Claim 6" or the "Online-Records Claim").

The defendants moved to dismiss. The district court dismissed the complaint with prejudice on three grounds: claim preclusion; expiration of the two-year limitation period for bringing the claims; and, as to Claims 2 and 5 (the Unfair-Judge and Second Unfair-Judge Claims), judicial immunity.

## II.

We agree with the district court's judgment but not all of its reasons. The court believed that claim preclusion applied because every claim could have been brought in the 2013 bill of review. We're not so sure about that.

A bill of review is a tool for overturning a judgment after the deadline for a direct appeal has passed. *See PNS Stores*, 379 S.W.3d at 275. A successful bill merely results in the setting aside of the challenged judgment. *See Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979). It is not at all clear that a plaintiff may add defendants to a bill-of-review proceeding if they were not defendants in the original, challenged action. Nor does it seem that money damages, like those sought by Lancaster now, are available to a bill-of-review complainant. So we do not agree with the district court's conclusion that Lancaster ought to have raised his civil-rights challenges in the course of the bill-of-review proceedings. *See Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 521 (5th Cir. 2016) ("Claim preclusion bars the litigation of claims that have been or should have been raised in an earlier suit."). In any event,

Claims 5 and 6 relate to events that occurred *after* Lancaster filed his bill of review in 2013, so it is incorrect to say that they should have been raised back then.

We nonetheless affirm the dismissal, mindful that we may do so "on any grounds supported by the record." *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (quotation omitted).

A.

We begin with Claim 1, the Raid Claim. This incident took place over the course of two months in 2009. Assuming, as the parties do, that the relevant limitation period is two years, this claim became time-barred in 2011.

Lancaster invokes the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* defers accrual of certain claims related to a criminal prosecution until termination of the prosecution in the criminal defendant's favor. *Id.* at 489–90. Lancaster contends that, by virtue of the *Heck* doctrine, the limitation period only began to run once his bill-of-review proceedings came to an end. We disagree.

At the time the sheriff's deputies entered his home, the criminal charges against Lancaster had been dismissed, and there was no protective order in place. So even if *Heck* can be stretched to cover civil protective orders, it does not apply here because the Raid Claim is entirely unrelated to the 2009 protective order. *See Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (noting that *Heck* does not apply when the "claim is temporally and conceptually distinct from the related conviction" and that "[t]his circuit has thus far applied the *Heck* doctrine only to claims that implicate criminal convictions or sentences" (quotation omitted)).

Lancaster also asserts that the continuing-tort doctrine, the discovery rule, and fraudulent concealment delay the accrual date or toll the limitation

period. We need not spend much time on those arguments. Under Lancaster's theories, the Raid Claim is only timely if the so-called raid continued until June 2016, two years before he commenced his federal lawsuit, or if the raid was undiscoverable until that time. But it wasn't. The raid of the Lancaster home was an isolated incident in 2009, of which Lancaster was aware at the time. The Raid Claim became time-barred in 2011. The district court was correct to dismiss it.

## B.

Next we consider Claims 2 and 5, the Unfair-Judge Claim and the Second Unfair-Judge Claim. Both claims stem from actions performed by judges in their judicial capacity. "[G]enerally, a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9 (1991) (per curiam). Judicial immunity does not apply, however, if the challenged "action[] [is] not taken in the judge's judicial capacity." *Id.* at 11. Lancaster argues that this exception applies because the judges had no discretion but to rule in his favor. That's not how this immunity works: "If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action he took was in error or was in excess of his authority." *Id.* at 12–13 (quotation omitted). The judges' decisions to rule against Lancaster may or may not have been correct as a matter of Texas law—but they *were* judicial decisions. Judicial immunity applies.

## C.

Claims 3 and 6, the Late-Notice and the Online-Records Claims, cannot overcome the same three hurdles: qualified immunity, failure to name proper parties, and failure to plead municipal liability.

1.

First, qualified immunity protects the individual defendants named in these claims—employees of the Harris County DA's Office, District Clerk's Office, and Constable's Office.

Qualified immunity shields public officials from suit unless "the right the official is alleged to have violated [was] 'clearly established'" at the time of the alleged violation. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quotation omitted). To show that a right is clearly established, a plaintiff need not provide "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

According to Lancaster, Claim 3 concerns a violation of his "clearly established fundamental entitlement to notice of application for [a] protective order where the 7 day delay represents more than 1/3 [of] the allowed time for the hearing to be held within 20 days." But Lancaster has not pointed to any precedent that places beyond debate the right to such specific notice. As for Claim 6, the Online-Records claim, the briefing is devoid of a case even hinting at the right to access state-court-protective-order records online.

Because Lancaster has failed to show that his rights were clearly established at the time they were allegedly violated, we need not consider whether these rights in fact exist. *See Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009) (permitting a court to determine that a right is not clearly established without deciding whether that right exists at all). Qualified immunity applies.

2.

Failure to name a proper party puts an end to the claims against the Harris County subdivisions named in Claims 3 and 6—the DA's Office, the District Clerk's Office, and Precinct 3 of the Constable's Office.

An entity's capacity to be sued is determined "by the law of the state where the court is located." FED. R. CIV. P. 17(b)(3). Lancaster has directed us to no Texas law permitting Harris County entities (including the DA's Office, the District Clerk's Office, and precincts of the Constable's Office) to sue or be sued separately from Harris County. These offices therefore have no place in this lawsuit. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991); *Potts v. Crosby Indep. Sch. Dist.*, 210 F. App'x 342, 344–45 (5th Cir. 2006) (per curiam) (affirming the district court's holding that the "Harris County Sheriff's Department, as a *non sui juris* division of Harris County, lacks the capacity to be sued").

3.

As for the allegations against Harris County, they are insufficient to get past a Rule 12(b)(6) motion. In order to survive Harris County's motion to dismiss, a plaintiff must "plead facts that plausibly establish: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Ratliff v. Aransas Cty.*, 948 F.3d 281, 285 (5th Cir. 2020) (quotation omitted). Lancaster's barebones allegations about the county's involvement contain none of these facts, only conclusory allegations. Harris County was properly dismissed. No defendants to Claims 3 and 6 remain.

D.

Finally, Claim 4 fails to state a claim. The premise of the Government-Taking-Sides Claim is that, under Texas law, a prosecutor may file a protective order application on behalf of an individual but may not then represent that

individual in the subsequent proceedings. As Lancaster would have it, the DA's representation of Barbara in the protective-order proceedings violated Texas law and, somehow, the U.S. Constitution as well.

Not so. Texas law permits a local government attorney to be "the prosecuting attorney responsible for filing applications" for a protective order. TEX. FAM. CODE § 81.007(a). Nothing in this text limits the government attorney to *only* "filing applications." Indeed, the same provision describes the government lawyer as a "*prosecuting* attorney" *Ibid.* (emphasis added). "Prosecute" means "[t]o commence *and carry out* a legal action." *Prosecute*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added; parentheses omitted). It would render the phrase "prosecuting attorney" meaningless if we read § 81.007(a) to permit a government attorney to file the application but not prosecute the case. And we are "general[ly] reluctan[t] to treat statutory terms as surplusage." *Bd. of Trs. of Leland Stanford Jr. Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (quotation omitted). Section 81.007(a) therefore must be read to authorize a government attorney to represent the party seeking a protective order throughout the proceedings. *See, e.g.*, *In re A.W.R.*, No. 10-09-00237-CV, 2010 WL 3272304, at *1 (Tex. App.—Waco Aug. 11, 2010, no pet.) ("An applicant for a protective order may be represented by either a prosecuting attorney or a private attorney."); *Striedel v. Striedel*, 15 S.W.3d 163, 167 n.2 (Tex. App.—Corpus Christi 2000, no pet.) (noting that § 81.007(a) is unique in Texas in that it provides the applicant with "statutorily guaranteed counsel").

The constitutional violation asserted in Claim 4 is predicated on a violation of Texas law. But the DA's office did not violate state law when it represented Barbara Lancaster. So Claim 4 was properly dismissed along with the others.

### III.

The district court denied Lancaster permission to amend his complaint. That was not an abuse of discretion. Nor was the court's failure to recuse.

### A.

Although leave to amend should be given "freely," FED. R. CIV. P. 15(a)(2), "[d]enying a motion to amend is not an abuse of discretion if," as here, "allowing an amendment would be futile," *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). Lancaster cannot plead around the time-bar, qualified immunity, and judicial immunity problems that doom most of his claims.

Additionally, Lancaster has not filed a proposed amended complaint. Nor has he "state[d] any material facts he would have included in an amended complaint" that would overcome the deficiencies in his original complaint. *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (per curiam). Even considering the patience courts must afford *pro se* plaintiffs, *see id.* at 767–68, it was not an abuse of discretion to deny leave to amend.

### B.

Finally, recusal. Lancaster relegates this issue to three sentences in his opening brief. We can dispose of it in two. The complained-of comments made by the district court reflected its measured views of the merits of the case, not any animus toward the plaintiff; recusal was unnecessary. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[O]pinions formed by the judge on the basis of facts introduced . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.").

\*     \*     \*

The judgment of the district court is AFFIRMED.