# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2025

Lyle W. Cayce
Clerk

No. 23-40547

Anthony Bernard Wingfield,

*Plaintiff—Appellant*,

*versus*

Unknown Garner, CO; Unknown Hinejosa, CO; Unknown Ellis, *Sergeant, Michael Unit*; Unknown Garner, *Sergeant, Michael Unit*; Unknown Cunningham, *Sergeant, Michael Unit*; Unknown Marshon, *CO, Michael Unit*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:21-CV-320

Before Graves, Engelhardt, and Oldham, *Circuit Judges*.
Per Curiam:[*]

Anthony Bernard Wingfield, an imprisoned man who had his medically-prescribed shoes repeatedly taken by correctional officers in a Texas state prison, appeals the dismissal of his suit brought pursuant to 42

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-40547

U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Eighth Amendment to the United States Constitution. We AFFIRM.

## FACTS AND PROCEDURAL HISTORY

Anthony Bernard Wingfield is imprisoned in the state of Texas. Wingfield, who has one leg amputated below the knee, alleges correctional officers in the prison confiscated his medically-approved shoes twice, forcing him to walk barefoot, miss meals, and suffer thirty-eight days without being able to attend an appointment at the brace and limb clinic, all despite him showing the officers his prosthesis and explaining the shoes were prescribed as medically necessary. When Wingfield requested that the officers contact the medical team so that he could at least have crutches to aid with his mobility, the officers refused.

After exhausting state administrative remedies, Wingfield filed a pro se civil complaint, bringing claims and seeking damages under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Eighth Amendment. The defendant correctional officers moved to dismiss Wingfield's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.

The magistrate judge recommended dismissing all official-capacity claims because the Eleventh Amendment bars a suit in federal court against a state unless the sovereign has unequivocally waived its immunity, and no waiver or relevant exception existed. The magistrate judge also recommended dismissing all individual-capacity claims. As far as the Eighth Amendment deliberate-indifference claim, the magistrate judge found that the allegations "simply do not amount to cruel and unusual punishment" because the facts do not support a finding that he suffered any physical injury or was in substantial risk of serious harm. Regarding his ADA claim, the

2

magistrate judge found Wingfield did not "allege any facts from which a reasonable fact-finder could conclude that the discrimination was intentional," and he thus failed to state a claim. Over Wingfield's objections, the district court adopted the magistrate judge's report and recommendation and dismissed Wingfield's claims. This timely appeal followed.

## STANDARD OF REVIEW

We review dismissals under Rule 12(b)(1) and 12(b)(6) de novo. *Smith v. Hood*, 900 F.3d 180, 184 (5th Cir. 2018). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Block v. Tex. Bd. of L. Examiners*, 952 F.3d 613, 616–17 (5th Cir. 2020) (quotation marks omitted).

We properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quotation marks omitted).

"Under the 12(b)(6) standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010). "The well-pleaded facts must permit the court 'to infer more than the mere possibility of misconduct.'" *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

No. 23-40547

## DISCUSSION

### A

Defendants assert that there is no subject matter jurisdiction to entertain claims against them in their official capacities because they are entitled to sovereign immunity.

"State sovereign immunity prohibits 'private suits against nonconsenting states in federal court.'" *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quoting *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019)). "State officials and agencies enjoy immunity when a suit is effectively against the state. Unless waived by the state, abrogated by Congress, or an exception applies, the immunity precludes suit." *Id.* (internal citation omitted). This immunity extends to state prisons, which are state agencies. *See Alabama v. Pugh*, 438 U.S. 781, 781 (1978) (per curiam) (collecting authority).

Here, sovereign immunity extends to the individual officers who were acting in their official capacities because it is effectively a suit against the state agency, and in turn, the state itself. The state has not waived its immunity. Nor has Congress abrogated state sovereign immunity with § 1983. *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015).

The remaining inquiry is whether an exception applies. Wingfield invokes the *Ex parte Young* exception. 209 U.S. 123 (1908) (allowing suits for prospective injunctive or declaratory relief against a state official acting in violation of federal law). However, Wingfield did not request injunctive or declaratory relief; he only requested damages for past conduct.

As there is no waiver, abrogation, or relevant exception, we lack subject matter jurisdiction to review Wingfield's § 1983 and Eighth Amendment official-capacity claims against the correctional officers.

No. 23-40547

Wingfield's official-capacity claims brought pursuant to Title II of the ADA must also be dismissed on sovereign immunity grounds. Even though Congress abrogated state sovereign immunity with Title II, it only did so validly "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (original emphasis). As we discuss in more detail below, Wingfield fails to show an actual violation, so his official-capacity claims under Title II are also appropriately dismissed. *See Block*, 952 F.3d at 619 ("Because [Plaintiff] has alleged no conduct that violates Title II, [Defendant] is entitled to Eleventh Amendment immunity.").

B

The Eighth Amendment requires prison officials to "provide humane conditions of confinement" by taking "reasonable measures to guarantee the safety of the inmates" and by ensuring "that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted).

To state an Eighth Amendment claim, a plaintiff must allege that: (1) the deprivation was objectively "sufficiently serious" so that the prison official's act or omission caused "the denial of the minimal civilized measure of life's necessities," and (2) the prison official who caused the alleged deprivation acted, subjectively, with "deliberate indifference to inmate health or safety." *Id.* at 834, 837 (quotation marks omitted).

To satisfy the subjective standard, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. However, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *See Williams v.*

5

*Hampton*, 797 F.3d 276, 288 (5th Cir. 2015) (en banc) (quoting *Farmer*, 511 U.S. at 842).

1

In *Farmer*, the Supreme Court explained that "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" 511 U.S. 825 at 832 (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

Wingfield alleges that he was unable to go outside and get food whenever it rained because the correctional officers took away his shoes on December 22, 2020, and refused to return them until February 11, 2021. However, it is unclear that Wingfield did not receive adequate food; the record fails to show how often he missed meals or that he was physically unable to go outside to retrieve the meals without having his medically-approved shoes.

Wingfield had to walk through urine and fecal matter in socks while attempting to go to the bathroom. In *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004), we concluded that living in conditions with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls "would present a substantial risk of serious harm to the inmates." *Id.* at 338. Because the "officials ha[d] displayed a deliberate indifference," we upheld the injunctive relief the district court entered for the prisoners as "justified by an Eighth Amendment violation." *Id.* While the conditions outlined by Wingfield are disgusting and unsanitary and fell below the standard a reasonable person would expect in a civilized society, they are not as dire as those in *Gates* and we do not conclude the facts show Wingfield faced a substantial risk of serious harm.

Finally, Wingfield could not go to the brace and limb clinic for thirty-eight days and alleges he suffered because of it. But he provides no detail as to what harm he suffered, or could have suffered, as a result.

Given the facts in the record, we are not convinced that Wingfield has met the objective part of our inquiry.

Next, the subjective inquiry: whether the correctional officers acted with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834 (quotation marks omitted). Even construing Wingfield's pleadings liberally because he is a pro se plaintiff, *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006), there is not enough in the record for us to conclude the risks he faced were sufficiently "serious" or "obvious."

On December 22, 2020, when Garner told Wingfield to give up his shoes, he responded that medical staff gave him the shoes and that he needed them because he wore a prosthesis and had no other appropriate footwear. Faced with this information, Garner responded that she could do whatever she wanted, and Wingfield left the area in his socks. Correctional officer Hinejosa stopped Wingfield, who again tried to plead his case, before correctional officer Ellis walked up and Wingfield once again pled his case and showed his prosthesis to no avail, before returning to his building wearing his socks. Because Wingfield managed to walk away without his shoes, it is not clear that Garner, Hinejosa, or Ellis understood that without the shoes Wingfield faced a threat of *serious* harm. After filing multiple complaints, Wingfield's shoes were returned on February 11, 2021.

Wingfield alleges that months later, on July 3, 2021, officer Cunningham confiscated his shoes a second time and refused to contact the medical department—even though he saw medical paperwork of Wingfield's amputation and his medical need for the shoes. This evinces indifference toward Wingfield needing his shoes for general mobility. But to satisfy the

subjective standard, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of *serious harm* exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837 (emphasis added). Wingfield again failed to plead what harm he experienced as a result or what substantial risk of serious harm this situation created. That is not enough to state a claim.

Finally, Wingfield alleges correctional officer Marshon denied Wingfield access for thirty-eight days to an appointment at the limb clinic to get his prosthesis altered. However, there is no evidence he suffered any physical harm due to this delay of medical care. *See Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Even inferring that he was less mobile without the shoes, without more-detailed allegations of how this could have or did increase his likelihood of harm, it is difficult to know what harm he could have experienced—and whether it was "serious."

Again, we construe Wingfield's pleadings liberally. Even so, his allegations—even if describing punishment some may colloquially call cruel and unusual—do not show that the potential resulting harm was sufficiently "serious" or "obvious."

As Wingfield has failed to "allege facts that support the elements of the cause of action in order to make out a valid claim," *Pilgrim's Pride*, 632 F.3d at 152–53, his claim was appropriately dismissed.

2

Wingfield also seeks compensation for his pain and suffering.

The Prison Litigation Reform Act provides that "[n]o federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. 1997e(e). The "physical injury" required by § 1997(e) "must be more

than de [minimis], but need not be significant." *Harper v. Showers,* 174 F.3d 716, 719 (5th Cir. 1999) (citation omitted).

Wingfield alleged that he suffered "grave psychological, emotional and physical complexities." This allegation of grave complexities is conclusory and not acceptable. *See Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005). Wingfield also alleges he suffered through discomfort due to the delay of his appointment to the brace and limb clinic. But this allegation lacks sufficient facts for us to draw an inference that the pain and discomfort was more than *de minimis. Cf. Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (concluding that a sore, bruised ear lasting for three days was *de minimis*). Accordingly, it was appropriate to dismiss his claims insofar as they seek compensation for pain and suffering.

C

"The ADA is a federal anti-discrimination statute designed to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Delano-Pyle v. Victoria Cnty.*, 302 F.3d 567, 574 (5th Cir. 2002) (cleaned up). This protection extends to state prisoners. *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998).

A plaintiff states a claim under Title II of the ADA if he alleges "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale*, 642 F.3d at 499.

Plaintiffs can also bring a failure-to-accommodate claim. To succeed, the plaintiff must prove that: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered

No. 23-40547

entity; and (3) the entity failed to make reasonable accommodations. *Neely v. PSEG Tex., Ltd. P'ship,* 735 F.3d 242, 247 (5th Cir. 2013).

1

We start with the disability-discrimination claim. As a below-the-knee amputee, Wingfield has a qualifying disability. *See* 42 U.S.C. § 12102(1)(A) (establishing that a person is disabled if he has "a physical or mental impairment that substantially limits one or more major life activities").

We are not convinced Wingfield has sufficiently alleged he was denied the benefits of services, programs, or activities. Though he missed some meals, it is unclear how many. Similarly, his medical care was delayed, not denied. *Cf. Georgia*, 546 U.S. at 881 ("[I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [plaintiffs'] disability-related needs in such fundamentals as mobility . . . constituted 'exclu[sion] from participation in or . . . deni[al of] the benefits of' the prison's 'services, programs, or activities.'" (third and fourth edits in original) (quoting 42 U.S.C. § 12132)).

However, Wingfield's discrimination claim falters because he fails to sufficiently allege that the correctional officers chose to deny him his shoes "by reason of his disability." Instead, it seems to be indiscriminate, run-of-the-mill bullying by correctional officers asserting power over an inmate—disabled or not.

Even assuming this amounts to deliberate indifference once Wingfield had explained his medical needs and an officer had seen medical documentation, it is still not enough. "Unlike other circuits, we have not held that deliberate indifference suffices." *Smith v. Harris Cnty.*, 956 F.3d 311, 318 (5th Cir. 2020) (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262–63 (3d Cir. 2013) (collecting, and agreeing with, cases from five other circuits)). In our circuit, "[a] plaintiff can recover money damages only

if he proves the defendant committed a violation of the ADA . . . and that the discrimination was intentional." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). Therefore, given a lack of evidence that any alleged discrimination was *intended* to discriminate against him *because of* his disability, we are constrained by precedent to deny his requested relief: money damages on a disability-discrimination claim.

2

Next, his failure-to-accommodate claim. As stated, Wingfield is a qualified individual with a disability because he is an amputee.

As noted above, it is unclear if the correctional officers originally understood the limitations that not having his shoes would impose on Wingfield given his disability. However, Wingfield has alleged that Cunningham re-confiscated his shoes and refused to contact the medical department—even though he saw medical paperwork of Wingfield's amputation and his medical need for the shoes. To the extent that the first incidents may not fall under the reach of the ADA, this one may because at that point we can reasonably infer that Cunningham knew that Wingfield's disability limited his mobility creating a medical need for his shoes.

Finally, Wingfield has alleged that though letting him keep his sneakers or returning them requires minimal effort, the prison ignored his complaint and refused despite his medical need. *Cf. Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) ("A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)). However, it is unclear that the prison and its staff's actions denied Wingfield "*meaningful access* to the benefit[s] that the

[prison] offers." *Alexander v. Choate*, 469 U.S. 287, 301 (1985) (emphasis added). Yes, he missed meals, but it is unclear how many or precisely why, and though his visit to the brace and limb clinic was delayed, he eventually visited the clinic.

Regardless, in this circuit, "[e]ven when plaintiffs successfully prove a disability-discrimination or a failure-to-accommodate claim, they 'may only recover compensatory damages upon a showing of intentional discrimination.'" *Smith*, 956 F.3d at 318 (quoting *Delano-Pyle*, 302 F.3d at 574; and citing *Miraglia*, 901 F.3d at 574). Again, absent any evidence that the officers acted with *intent* to discriminate, we are constrained by our precedent to deny Wingfield's sought-after relief: damages based on a failure-to-accommodate claim.

*    *    *

For the foregoing reasons, we AFFIRM the district court's dismissal of all claims.