# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 5, 2007

Charles R. Fulbruge III
Clerk

No. 05-41395

LARRY SHANE FARR, All other similarly situated persons, who have been currently are, and/or will be, suspected and/or confirmed as to gang memberships, associations, and/or affiliations, by the Texas Department of Criminal Justice while within its custody,

Plaintiff-Appellant

v.

ADAN E RODRIGUEZ; STAFFORD O HALL; DOUGLAS W SATTERFIELD; JASON T HEATON; STUART N CALHOUN; ET AL

Defendants-Appellees

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:04-CV-516

Before REAVLEY, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Larry Shane Farr, formerly Texas prisoner # 665164, filed a pro se 42 U.S.C. § 1983 complaint against 50 prison officials arising out of his classification as a gang member and placement in administrative segregation. After conducting a hearing pursuant to Spears v. McCotter, 766 F.2d 179 (5th

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Cir. 1985), the district court dismissed the complaint as frivolous. Because we conclude that many of Farr's claims are now moot due to his release from prison and that the remaining claims are without merit, we affirm.

Farr alleged that in July 2003 prison officials erroneously classified him as a member of a gang known as the "Aryan Circle" and placed him in administrative segregation. He claimed that his due process rights were violated and that he was not permitted to contest the gang-membership determination before the State Classification Committee until more than one year later, whereupon he was not permitted to rebut the evidence against him. Farr's voluminous complaint raises a panoply of legal theories, including due process, equal protection, self-incrimination, right to counsel, retaliation, conspiracy, and numerous alleged procedural errors. Farr sought both injunctive and monetary relief.

The district court dismissed the complaint as frivolous pursuant to 28 U.S.C. § 1915A. We review such dismissals de novo. Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998).

We note first that during the pendency of this appeal Farr was released from prison and is no longer in custody. To the extent that Farr sought injunctive relief due to the conditions of his confinement, his claims are now moot. See Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002). Farr also sought money damages and claimed there were collateral consequences to his gang classification, but his claims are unavailing.

Farr argues that the district court erred in dismissing his claim that the gang-membership determination and subsequent placement in administrative segregation violated his right to due process. In order to state a viable § 1983 claim, Farr must show that he has been deprived of a liberty interest protected by the Fourteenth Amendment. Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 2393 (2005); Coleman v. Dretke, 395 F.3d 216, 221 (5th Cir. 2004).

Farr's confinement in administrative segregation because of his classification as a gang member does not trigger due process concerns. See Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996); Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995). The Supreme Court has recognized that the extreme conditions of the Ohio "Supermax" prison involved such atypical and extraordinary circumstances that placement there implicated a liberty interest. Wilkinson, 545 U.S. at 223–24, 125 S. Ct. at 2394–95. The conditions about which Farr complains—ranging from the lack of access to work and education programs to the deprivation of salt and pepper, television, and games—do not rise to the level recognized in Wilkinson as sufficient to implicate a liberty interest. Although Farr also alleged that he was denied parole eligibility because of his classification and that his term in administrative segregation was potentially indefinite—two conditions present in Wilkinson—Farr's case is distinguishable. Farr was not automatically ineligible for parole, which is determined under state law by the offense of conviction and the discretion of the parole panel. TEX. GOV'T CODE §§ 508.141(a)(3), (d)–(e). Further, the indefinite nature of placement in administrative segregation was not alone decisive in Wilkinson, where there were also severe limitations on human contact and other extraordinary conditions not found here. See Wilkinson, 545 U.S. at 223–24, 125 S. Ct. at 2394–95.

Farr also asserts a liberty interest in the consequences of the gang-membership determination following his release and in the "stigmatizing" effect of being labeled a gang member. He asserts that his gang classification is shared with law enforcement agencies and also could be used against him in future criminal prosecutions. However, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken, 71 F.3d at 193 (finding no liberty interest in opportunity to earn good time credits). Farr's claims of potential future injury remain too

speculative to establish a cognizable liberty interest. To the extent Farr alleges a stigma from being classified as a gang member, the classification, without more, is insufficient to raise a constitutional claim. See, e.g., Vitek v. Jones, 445 U.S. 480, 493–94, 100 S. Ct. 1254, 1264 (1980) (finding a liberty interest in the stigmatizing effect of being labeled mentally ill together with mandatory behavior modification treatment) and Coleman, 395 F.3d at 223 (holding that labeling an inmate as a sex offender and requiring intrusive and behavior-modifying therapy as a condition of parole implicated a liberty interest). Because Farr fails to allege a protected liberty interest, we do not address whether the process for determining his classification was adequate.[1]

Farr also argues that the district court erroneously dismissed his equal protection claim. He argues that only members of certain gangs are forced into administrative segregation and that inmates so confined are treated differently. Because Farr is no longer in custody, he lacks a personal interest in the prison's assignment of gang members to administrative segregation, and his claim is moot. To the extent Farr's pleadings may be liberally construed to claim that he was treated differently because he was placed into "rotation cells" without a specific security designation, Farr fails to show that he suffered disparate treatment compared with similarly situated prisoners as a result of the prison's security-related decisions. See Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998).

Farr argues that his Fifth Amendment right against self-incrimination was also implicated because in order to avoid segregation he would have had to enter a gang-renunciation process, which involves signing an admission of gang membership. Farr's release from custody obviates any need for Farr to participate in such a process, and the claim is moot.

---

[1] In the absence of a claim establishing a due process violation, the district court correctly dismissed Farr's claim that prison officials conspired to violate his rights. See Villanueva v. McInnis, 723 F.2d 414, 418 (5th Cir. 1984) (requiring actual deprivation of constitutional right for conspiracy claim under § 1983).

Farr's contention that his gang classification caused him to lose good time credits in violation of the Ex Post Facto Clause is also moot due to his release from prison because under Texas law good time would not carry over to any subsequent incarceration. See Adair v. Dretke, 150 F. App'x 329, 332 (5th Cir. 2005); TEX. GOV'T CODE § 498.004(b). Furthermore, there was no ex post facto violation because good time credits affect only parole eligibility and their loss does not increase the sentence. See Palmer v. Texas Bd. of Paroles, 89 F. App'x 857, 858 (5th Cir. 2003).

Farr next asserts various claims related to his conditions of confinement. He claims prison officials violated the Eighth Amendment and subjected him to cruel and unusual punishment because guards used handcuffs on him that were not sanitized after being worn by other inmates; officials placed "security cards" with the inmates' identifying information outside each cell; inmates were rotated among cells; and an inadequate ventilation system caused a "foul odor." Farr's claims fail because these inconveniences of prison life neither amount to "the denial of the minimal civilized measure of life's necessities" nor support an inference of deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994) (internal quotation marks omitted). Farr also asserts a claim for a "state-created danger" on similar grounds, but we have refused to recognize that theory. See, e.g., Longoria v. Texas, 473 F.3d 586, 593 n.8 (5th Cir. 2006).

Farr contends that prison officials denied him access to the courts because they prevented him from accessing his legal materials and seeking assistance from other inmates, provided him with legal research only three days per week, provided individual cases requested rather than the entire reporter volumes, and sometimes provided erroneous or incomplete items. The right to access the courts guarantees "only that [inmates] be able to present their grievances to the courts." Lewis v. Casey, 518 U.S. 343, 360, 116 S. Ct. 2174, 2184 (1996). It does

not guarantee unlimited access to generalized legal research. See id.; Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999). The limitations on Farr's research did not amount to a constitutional violation. Moreover, Farr fails to show an actual injury, and his argument is belied by his voluminous pleadings, numerous motions and exhibits, and frequent citations to caselaw. See Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) (noting that "an inmate alleging denial of access to the courts must demonstrate an actual injury stemming from the defendants' unconstitutional conduct").

Farr also asserts that prison officials interfered with his right to file administrative grievances necessary to exhaust his claims. He fails to assert any actual injury, however, because prison officials stipulated at the Spears hearing that all of his claims were exhausted.

Farr argues that prison officials retaliated against him for conducting legal research and filing administrative grievances by placing him in rotation cells, requiring him to file numerous grievances to exhaust his administrative remedies, constraining his access to legal materials, and tampering with his mail. An inmate cannot make a claim for retaliation unless the retaliation involves the violation of "a specific constitutional right." Jones, 188 F.3d at 325. The alleged actions did not deprive Farr of a specific constitutional right, and the district court correctly dismissed the retaliation claim. See id.

Farr further objects to the district court's denial of his motion for the appointment of counsel. Farr fails to demonstrate the "exceptional circumstances" necessary for the appointment of counsel, and the district court did not err. See Ulmer v. Chancellor, 691 F.2d 209, 212 (5th Cir. 1982).

Finally, Farr objects to a multitude of alleged procedural errors in the district court proceedings generally and in the Spears hearing specifically. We conclude that the claims are without merit.

AFFIRMED.