# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 8, 2021

Lyle W. Cayce
Clerk

No. 19-30842

Brandon S. LaVergne,

*Plaintiff—Appellant*,

*versus*

Keith Stutes, District Attorney Louisiana 15th Judicial District Court; Michael Harson, Former District Attorney Louisiana 15th Judicial District Court; Herman Clause, Former District Court Judge Louisiana 15th Judicial District Court; N. Burl Cain, Former Louisiana State Prison Warden; James M. LeBlanc, Secretary, Department of Public Safety and Corrections; Burleigh Doga, Assistant District Attorney Louisiana 15th Judicial District Court; J. Clay Lejuene; Doug Welborn, Clerk of Court Louisiana 19th Judicial District Court; Daniel M. Landry, III, Assistant District Attorney; Alan Haney, Assistant District Attorney; Roger Hamilton, Assistant District Attorney; Darrel Vannoy, Warden, Louisiana State Penitentiary; Taylor Curtier; Paul Smith; Kevin Benjamin, Former Warden of Security,

*Defendants—Appellees*,

_____

Brandon S. LaVergne,

*Plaintiff—Appellant*,

No. 19-30842

*versus*

KEITH STUTES, DISTRICT ATTORNEY LOUISIANA 15TH JUDICIAL DISTRICT COURT, INDIVIDUAL AND OFFICIAL CAPACITY; MICHAEL HARSON, FORMER DISTRICT ATTORNEY LOUISIANA 15TH JUDICIAL DISTRICT COURT, INDIVIDUAL AND OFFICIAL CAPACITY; N. BURL CAIN, FORMER WARDEN, LOUISIANA STATE PRISON IN INDIVIDUAL CAPACITY; HERMAN CLAUSE, FORMER DISTRICT COURT JUDGE, LOUISIANA 15TH JUDICIAL DISTRICT COURT OFFICIAL CAPACITY,

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-1696
USDC No. 3:18-CV-693

---

Before CLEMENT, HAYNES, and WILSON, *Circuit Judges*.

PER CURIAM:*

*Pro se* litigant Brandon LaVergne appeals the dismissal of his 42 U.S.C. § 1983 claims before the district court. LaVergne brought several lawsuits against various Louisiana state officials, alleging constitutional violations stemming from his previous criminal convictions and seeking both monetary damages and injunctive relief. The district court denied LaVergne's various motions, and—on motions by the defendants—it

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

dismissed his consolidated lawsuit as frivolous under 28 U.S.C. § 1915A. We affirm in part and reverse in part the decision of the district court.

## I.

In 2012, LaVergne pled guilty to two counts of first-degree murder. In accordance with the provisions of his plea agreement, he was subsequently sentenced to life in prison, which he was to serve in solitary confinement at the Louisiana State Penitentiary ("LSP"). His claims below arose from and during his term of imprisonment.

Between 2012 and 2015, LaVergne filed various appeals at the state level, seeking only collateral review of his state court convictions. *See Lavergne v. Cain*, No. 6:14-cv-2805, 2018 WL 1995588, at *1–2 (W.D. La. Apr. 10, 2018) (explaining the posture of his state collateral review). Each failed because he did not comply with the court's rules; and, even when he re-filed his appeals to comply with the rules, each application for relief was denied on the merits. *Id.* In filing these appeals, LaVergne took umbrage at the state court fees imposed by the Clerk of Court, Doug Welborn. LaVergne also filed a federal habeas petition in 2014, which was later denied and dismissed with prejudice. *Id.* at *9.

Undeterred, LaVergne next filed several frivolous lawsuits in federal court, *see, e.g.*, *LaVergne v. Martinez*, 567 F. App'x 267 (5th Cir. 2014) (mem.), and was sanctioned, *see, e.g.*, *LaVergne v. Cain*, No. 14-2805-P, 2019 WL 4747685 (W.D. La. Sept. 27, 2019) (noting in the caption "Sanctioned/Barred Brandon Scott LaVergne"); now, LaVergne must pre-pay fees in order to file additional lawsuits in federal court.

During his time at the LSP, LaVergne has been housed in both "restricted custody," also known as solitary confinement, and the LSP dorms. Beginning in 2012, he was initially assigned to restricted custody, where he had limited access to the law library, legal materials, and counsel.

When he moved into the LSP dorms in June 2017, he frequently encountered other inmates using drugs, and there was little intervention from security because the facility was overcrowded. The conditions produced strong odors, leaving the dorms filthy, and the overcrowding forced the inmates to double bunk.

During this time, LaVergne learned that his mother was dying. This prompted him to attempt to escape the LSP. He did not succeed, and he was ultimately disciplined, receiving a sentence of "maximum death row CCR."[1] As a result, he was re-assigned to restricted custody in October 2018.

Midway through this series of misadventures, in November of 2017, LaVergne filed this suit.[2] LaVergne later amended his complaint to include some of the aforementioned, but subsequent-in-time grievances. He also filed a "Motion for Summary Judgment by Default" on June 25, 2019, which was directed at defendants Judge Herman C. Clause and attorney J. Clay LeJuene. The district court denied his motion as moot on July 16, 2019, finding that service had been insufficient.

The defendants responded to LaVergne's complaint by filing motions to dismiss.[3] The district court referred the matter to a magistrate judge, who

---

[1] "CCR" is the "close cell restricted" unit.

[2] LaVergne's initial pleading was dismissed on August 14, 2018 because he failed to comply with a procedural requirement. He had, however, corrected his errors and, effectively, filed a proper complaint, but this filing was accidentally placed under a new docket number. Once this was brought to the district court's attention, the two cases were consolidated.

[3] While the defendants' motions to dismiss were pending, LaVergne also filed several discovery motions to which the defendants responded. All of the discovery motions were denied as moot when the district court adopted the magistrate judge's report and recommendation.

issued a report and recommendation on September 10, 2019, recommending that the district court dismiss LaVergne's claims. After reviewing the record, the district court adopted the magistrate judge's report and recommendation on September 23, 2019 and dismissed the lawsuit. LaVergne timely appealed.

II.

All of this led LaVergne to raise a litany of issues on appeal. First, LaVergne contends that the district court erred in granting the defendants' motion to dismiss because he failed to state a claim. Specifically, he asserted below that the enforcement of his plea and sentence were the product of a conspiracy and violated his constitutional rights. He also challenged the conditions of his confinement in the LSP dorms. LaVergne further claimed that he was denied the right to access the courts by virtue of the imposition of state court fees during the course of his state appeals, and the allegedly poor quality of the law library and inmate counsel.

Second, he avers on appeal that, in granting the defendants' motion to dismiss, the district court ignored his claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). LaVergne also contends that the district court further erred in granting the motion by determining that he failed to exhaust one of his restricted custody claims and by declining to exercise supplemental jurisdiction over his state law claims. Next, he argues that the district court should not have dismissed his complaint prior to discovery. And, finally, LaVergne claims that the district court improperly denied his motion for "summary judgment by default."

We review Rule 12(b)(6) dismissals *de novo*, *Lampton v. Diaz*, 639 F.3d 223, 225 (5th Cir. 2011), and we must review LaVergne's claims while remaining mindful that he is proceeding *pro se*, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("[T]he allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers . . . .").

No. 19-30842

## A.

### 1.

With respect to the claims dismissed as frivolous by the district court, LaVergne's principal contention is that the district court erred in finding that his claim concerning his allegedly illegal plea and sentence was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). LaVergne argues that his claim is distinct from those that are barred by *Heck*.

*Heck* requires the dismissal of a § 1983 lawsuit where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487; *see Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (holding that, where a defendant failed to satisfy the favorable termination requirement under *Heck*, he was barred from recovery and failed to state a claim upon which relief may be granted); *Hamilton v. Lyons*, 74 F.3d 99, 102 (5th Cir. 1996) ("A § 1983 claim which falls under the rule in *Heck* is legally frivolous . . . .").[4] Thus, the issue before us is whether any aspect of LaVergne's claim is separable from those portions of his claim that—if successful—would require a determination that the outstanding criminal judgment against him was invalid.

To review such a claim, we must "assess[] whether a claim is 'temporally and conceptually distinct' from the related conviction and

---

[4] The Supreme Court confirmed this principle in *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.").

sentence." *Smith v. Hood*, 900 F.3d 180, 185 (5th Cir. 2018) (quoting *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008)).  In other words, the crux of the issue is whether the claim can "'coexist' with the conviction or sentence without 'calling [it] into question.'"  *Id.* (quoting *Ballard v. Burton*, 444 F.3d 391, 400–01 (5th Cir. 2006)).

Our review of LaVergne's claim concerning his allegedly illegal plea and sentence leads us to conclude that aspects of his claim survive *Heck*.  To be sure, LaVergne's allegations that his "illegal sentence" was a "product of a conspiracy among the state actors, [his] attorneys, and prison officials" are barred by *Heck*.  *See LaVergne v. Vannoy*, No. 18-30639 (5th Cir. 2019) (denying LaVergne a certificate of appealability regarding the legality of his sentence).  It is axiomatic that success on such a claim could not coexist with his sentence.  We affirm the judgment of the district court insofar as it so determined that LaVergne's claim must be dismissed.

But, LaVergne's claim is not limited to the existence of this conspiracy.  And, the Supreme Court has explicitly stated that "challenge[s to] conditions of confinement, but not the fact or length of the sentence, are not barred by *Heck*."  *Smith*, 900 F.3d at 185 (citing *Wilkinson*, 544 U.S. at 83–84).  Below, LaVergne leveled several attacks at the imposition of solitary confinement in his case.  He initially contended only that solitary confinement is cruel and unusual, in violation of the Eighth Amendment, but later supplemented this claim with specific examples.  LaVergne further argued that his placement in solitary confinement was improper because he was not given a "classification hearing" prior to the initial imposition of solitary confinement.  And, although somewhat difficult to discern, it appears that LaVergne alleged that the imposition of these conditions stemmed from the "conditions-of-confinement" provisions of his plea agreement.

Despite their tangential relationship to LaVergne's plea and sentence, none of these arguments challenges the "fact or length of the sentence." *Wilkinson*, 544 U.S. at 83–84. Instead, they are squarely aimed at the condition of solitary confinement. Furthermore, as he is a *pro se* litigant, we are required to view LaVergne's claims—although inartfully drafted—liberally. *Haines*, 404 U.S. at 520. Therefore, expressing no opinion on the likelihood of success of his claim, we hold that the district court erred in dismissing his claim insofar as he challenges the imposition of solitary confinement and that this portion of LaVergne's claim survives *Heck*.

Before his claim may return to the district court, however, it must be further refined. LaVergne was placed in restricted custody twice: first, from 2012 to June 2017, and he was returned there, in October 2018, following his attempted escape. Only his first assignment to restricted custody endures further scrutiny at this stage.

As his claim pertains to the latter period, it was simply not properly exhausted. *See* 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). LaVergne filed an administrative grievance relating to his return to restricted custody, which was imposed because of his attempted escape. Yet, although LaVergne eventually exhausted these administrative appeals, he did not do so *before* filing his lawsuit or amending his complaint. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam) ("[T]here can be no doubt that the *pre-filing* exhaustion of prison grievance processes is mandatory." (emphasis added)). His appeal was officially exhausted on June 25, 2019—well after the filing of his complaint on November 22, 2017, and his amended complaint on August 1, 2018. Thus, as LaVergne's claim pertains to his second assignment

to restricted custody, we affirm the determination of the district court that his claim was unexhausted.

With respect to LaVergne's initial assignment to restricted custody, we turn to the claim defendants'—Burleigh Doga, J. Clay LeJuene, Keith Stutes, Michael Harson, Herman C. Clause, N. Burl Cain, James LeBlanc, Daniel Landry, III, Alan Haney, and Roger Hamilton—raised defenses. In their motions, the defendants alleged myriad defenses, including: absolute immunity, qualified immunity, prescription, and res judicata.

As to defendants Stutes, Harson, Clause, Doga, LeJuene, Landry, Haney, and Hamilton, LaVergne's claim may proceed no further. As an initial matter, § 1983 does not reach LeJuene. *See* § 1983 (requiring a deprivation that takes place "under color of [law]"). What's more, Stutes, Harson, Landry, Haney, and Hamilton were named in this lawsuit solely because of their positions as District Attorneys and Assistant District Attorneys. *See Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under [§] 1983."). And, the Honorable Herman C. Clause presided over LaVergne's criminal case. *See Boyd v. Biggers*, 31 F.3d 279, 284–85 (5th Cir. 1994) ("Judicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial functions."). Thus, these defendants are entitled to absolute immunity from LaVergne's claim.

Because the district court dismissed the entirety of LaVergne's claim as barred by *Heck*, it did not reach the defendants' defenses. "[A]s a 'general rule,' we do 'not consider an issue not passed upon below' . . . ." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quoting *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014)). Thus, with the exception of absolute immunity, we conclude that each defense is more properly

considered by the district court in the first instance.[5] *See Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (qualified immunity); *Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 466 (5th Cir. 2012) (res judicata); *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (prescription). Therefore, as LaVergne's claim pertains to his first assignment to restricted custody and to those defendants not protected by absolute immunity—N. Burl Cain, and James LeBlanc—we reverse and remand this claim to the district court for consideration of the claim defendants' raised defenses.[6]

2.

LaVergne also claimed that the conditions of his confinement in the LSP dorms from June 2017 to October 2018—apart from his assignment to solitary confinement—violated the Eighth Amendment, stating that "atypical conditions were imposed on [him]" while he was incarcerated there. To establish such a violation, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). And, the prison officials responsible for the deprivation must have a "sufficiently culpable state of mind." *Id.* (quotation omitted). "In prison-conditions cases[,] that state of mind is one of deliberate indifference to inmate health or safety . . . ." *Id.* (internal citations and quotation omitted).

---

[5] We express no opinion on the defendants' likelihood of success on the raised defenses.

[6] Because we are reviving LaVergne's federal claim as it concerns the imposition of solitary confinement, we decline to address his challenge to the district court's decision not to exercise supplemental jurisdiction over his Louisiana state law claims. The district court may reassess the propriety of exercising such jurisdiction on remand.

LaVergne contends that the LSP dorms were overcrowded, which forced the inmates to double bunk.  He alleges that the filth from the overcrowding produced strong odors, and that there was limited security because the overcrowding spread the security guards thin.  Finally, he claims that he was exposed to environmental tobacco smoke.

LaVergne's allegations fall short of what is required by Rule 12(b)(6).  His contention that the conditions were "illegal" is conclusory, and he fails even to allege facts showing that his safety was at risk or that any defendant disregarded an excessive risk to his safety.  *See Hope v. Harris*, No. 20-40379, 2021 WL 2523973, at *7–10 (5th Cir. 2021) (per curiam).  Additionally, he does not claim that he was exposed to unreasonable levels of environmental tobacco smoke.  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993) ("With respect to the objective factor, [the plaintiff] must show that he himself is being exposed to unreasonably high levels of [environmental tobacco smoke].").

Furthermore, even if his allegations were sufficiently pled, many of these conditions are not *per se* violations of the Eighth Amendment.  *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (double-celling); *Farr v. Rodriguez*, 255 F. App'x 925, 927 (5th Cir. 2007) (per curiam) (odors); *Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004) (overcrowding).  "In sum, the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience."  *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989).  Thus, we affirm the decision of the district court as to LaVergne's claim regarding the conditions of confinement in the LSP dorms.

3.

LaVergne also alleged that he was denied access to the courts in two forms: (1) by being kept from the law library and being provided inadequate

inmate counsel, and (2) by virtue of the requirement that he pay state court fees. The district court properly dismissed each claim.

Unquestionably, those who are incarcerated have a right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). But this right is not unlimited. "[The right] guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id.* at 356. To succeed on a denial of access to the courts claim, LaVergne must show that "his ability to pursue a nonfrivolous, arguable legal claim was hindered." *Brewster v. Dretke*, 587 F.3d 764, 769 (5th Cir. 2009) (quotation omitted).

Beyond his bald assertions that he could not access the law library and that inmate counsel was inadequate, LaVergne fails to support his claim with any facts. Furthermore, he does not identify a single legal cause of action that was affected by any such denial of access. Accordingly, we see no reason not to affirm the district court's dismissal of this denial of access claim.

As to LaVergne's denial of access claim concerning state court fees, it suffers from the same errors. Conspicuously absent from his pleadings is any explanation of a legal claim that was negatively affected by Doug Welborn's imposition of state court fees. Without more, his claim must fail. As a result, we affirm the decision of the district court on both of LaVergne's denial of access claims.

B.

In resolving the defendants' motions to dismiss, the district court did not address LaVergne's claim that his religious rights under RLUIPA had been violated. RLUIPA prohibits the government from substantially burdening a prisoner's religious exercise. *See* 42 U.S.C. § 2000cc-1(a) ("No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government

demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."). LaVergne contends that he was deeply offended by the destruction of Bibles while he was in the LSP dorms. He alleges that he witnessed other prisoners rip pages from Bibles and use them to roll cigarettes. This does not evince government action sufficient to state a claim under RLUIPA. Accordingly, any oversight by the district court on this issue with respect to LaVergne's term in the LSP dorms was harmless error.

Additionally, however, LaVergne alleges that he was denied access to church. He claims that this occurred "while [he] was held in CCR from Aug[ust] 2012 until June 2017." Although prisons may constitutionally restrict access to religious services if doing so is narrowly tailored, achieved by the least restrictive means, and justified by a compelling governmental interest, LaVergne's allegation may be sufficient to state a claim under RLUIPA at the motion to dismiss stage. *See, e.g.*, *Baranowski v. Hart*, 486 F.3d 112, 120–22 (5th Cir. 2007) (analyzing inmate's RLUIPA claim for denial of access to religious services at the summary judgment stage).

LaVergne brings this claim against defendants N. Burl Cain and James M. LeBlanc.[7] But, RLUIPA does not provide a private right of action for damages against state officials in their individual capacities. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 330 (5th Cir. 2009), *aff'd sub. nom.*, *Sossamon v. Texas*, 563 U.S. 277 (2011). Therefore, any such claim fails.

---

[7] LaVergne did not clearly articulate this claim in the district court. And he does not make clear against whom he brings this claim. But, construing his pleadings liberally as we must, logically, he must intend to bring this claim against Cain and LeBlanc, as they are the only named defendants involved in enforcing various prison policies.

As to any claim against these defendants in their official capacities, LaVergne sued only LeBlanc in his official capacity. LeBlanc is (and was, at the relevant time) a state official: Secretary for the Louisiana Department of Public Safety and Corrections. *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("State officials and agencies enjoy immunity when a suit is effectively against the state."), *cert. denied*, – U.S. – (2021). Furthermore, the Supreme Court has made clear that the states do not waive their sovereign immunity to suits for money damages under RLUIPA by accepting federal funds. *Sossamon*, 563 U.S. at 293. And, LaVergne's claim is not for prospective, injunctive relief: it focuses on a prohibition from church services that occurred between August 2012 and June 2017. As a result, LaVergne's claim fails, and the district court did not err in dismissing LaVergne's RLUIPA claim as to his initial term in solitary confinement.

## C.

Following closely on the heels of LaVergne's challenge to the district court's grant of the defendants' motions to dismiss, LaVergne contends that the district court erred in dismissing his complaint prior to discovery. But, his claim ignores the very purpose of 28 U.S.C. § 1915A(a): to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." LaVergne cites no authority demonstrating that he was entitled to discovery. Indeed, that would defeat the entire purpose of the motion to dismiss stage. As a result, we conclude that the district court did not err in dismissing LaVergne's complaint prior to discovery.

## D.

Finally, LaVergne claims that the district court erred when it set aside the entry of default as to defendants Herman C. Clause and J. Clay LeJuene.

Under Federal Rule of Civil Procedure 55(c), a district court may set aside entry of default for "good cause." "[T]he decision to set aside a default is committed to the sound discretion of the trial court." *Moreno v. LG Elecs., USA Inc.*, 800 F.3d 692, 698 (5th Cir. 2015) (citation omitted). We review for an abuse of discretion. *See Gen. Tel. Corp. v. Gen. Tel. Answering Serv.*, 277 F.2d 919, 921 (5th Cir. 1960) ("[T]he trial court's exercise of discretion will be interfered with by the appellate court only where there is an abuse.").

On June 25, 2019, LaVergne filed a "Motion for Summary Judgment by Default." Previously, on June 19, 2019, Clause and LeJuene had been entered into default as they had failed to respond to LaVergne's complaint. Later, they filed motions to set aside the entry of default, arguing that service had been insufficient. On July 16, 2019, the district court agreed, granting defendants Clause's and LeJuene's motions to set aside the clerk's entry of default and denying LaVergne's motion as moot.

On appeal, LaVergne does not contend that service had, in fact, been properly perfected on the defendants. Rather, he argues that he was entitled to a hearing before Clause's and LeJuene's entries of default were set aside. LaVergne cites no authority supporting his contention, and Rule 55 does not provide any. Thus, we conclude that the district court did not abuse its discretion in setting aside these entries of default.

## III.

We AFFIRM the decision of the district court as to all issues and as to all defendants, except—insofar as LaVergne's claim concerning his illegal plea and sentence regards the imposition of solitary confinement—we REVERSE and REMAND the claim, only as to defendants N. Burl Cain, and James LeBlanc, to the district court for consideration of the claim's merits and the previously-raised defenses.