**[DO NOT PUBLISH]**

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 1, 2005
THOMAS K. KAHN
CLERK

_____

**No. 05-12766**
**Non-Argument Calendar**

_____

D. C. Docket No. 03-01830-CV-ORL-22-DAB

RAMON BADILLO,

Plaintiff-Appellant,

versus

JANET THORPE,
Judge, Orange County Circuit Court,
STATE OF FLORIDA,

Defendants,

COURT ADMINISTRATOR OFFICER,
Orange County Circuit Court,

Defendant-Appellee.

_____

**Appeal from the United States District Court**
**for the Middle District of Florida**

_____

**(December 1, 2005)**

**Before ANDERSON, BIRCH and WILSON, Circuit Judges.**

**PER CURIAM:**

Ramon Badillo, proceeding *pro se*, appeals the dismissal of his claims, based upon the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.*, the Rehabilitation Act of 1974 ("RA"), 29 U.S.C. § 701, *et. seq.*, and 42 U.S.C. § 1983, against Circuit Court Judge Janet Thorpe and Court Administrator Officer Matt Benefiel. Although Badillo makes no specific arguments on appeal, given his *pro se* status and a liberal construction of his pleadings, we address whether the district court erred by (1) granting the defendants' motion to dismiss with respect to Badillo's ADA and RA claims against Thorpe and his § 1983 claims against both defendants, and (2) granting Benefiel's motion for summary judgment with respect to the ADA and RA claims against him in his official capacity. *See McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994) (stating that we construe *pro se* briefs liberally).

## I. Background

Badillo is a hearing-impaired individual who was involved as a *pro se* litigant in an unrelated civil case pending in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida. Upon receiving notice of a hearing, he sent a letter to the Court Administrator's Office, stating that he is hearing-impaired

and requesting "an interpreter as special accommodation to participate [sic]." At the hearing, a sign language interpreter was present[1], but Badillo stated that he did not know sign language and instead relied on an infrared assistive listening device. Judge Thorpe replied, "We don't have that." Thorpe dismissed the interpreter and seated Badillo within four feet of herself and instructed all parties to project their voices and speak loudly. The interpreter advised that projecting would not help Badillo because he had to rely on line of sight. Thorpe asked Badillo if he read lips, and Badillo stated that he used lip reading and could understand people who were standing close by.[2] At the hearing, Thorpe dismissed Badillo's case with prejudice for lack of standing. In district court, and now on appeal, Badillo argues that the failure to postpone the hearing or provide the infrared assistive listening device violated his rights under the ADA, RA, and § 1983.

## II. Grant of Motion to Dismiss Claims under ADA, RA, and § 1983

We review *de novo* a dismissal for lack of subject matter jurisdiction.

---

[1]There are two types of interpreters that assist the hearing-impaired. A sign language interpreter employs sign language to facilitate communication with the hearing-impaired individual, while an oral interpreter silently mouths words to the hearing-impaired person in order to allow him or her to rely upon lip reading. While there is some confusion in the parties' briefs as to whether a sign language interpreter or an oral interpreter was provided, it seems clear from the record that a sign language interpreter was present at the hearing.

[2]Badillo stated, "Well, I use lip reading, but sometimes if the people, they don't talk too loud, I can hear them. Like it's very easy for me, I'm very close, I understand you very easy; but if I'm more than four feet . . .."

3

*Williams v. Best Buy*, 269 F.3d 1316, 1318 (11th Cir. 2001).

## A. ADA and RA

Here, Badillo sued both Thorpe and Benefiel in their official and individual capacities, for money damages and injunctive relief, under the ADA and RA. The district court dismissed the ADA and RA claims in both official and individual capacity against Thorpe based upon the *Rooker-Feldman* doctrine[3] as well as absolute judicial immunity, and in individual capacity against Benefiel because there is no individual capacity liability under Title II of the ADA or RA. We now affirm, although in so holding we do not find it necessary to address the *Rooker-Feldman* doctrine.

Badillo's claim for money damages against Thorpe based upon the ADA and RA is barred by the doctrine of absolute judicial immunity. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 (9th Cir. 2001) (holding that state trial judge was entitled to judicial immunity against accommodation claims brought by hearing impaired litigant). However, "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity." *Pulliam v. Allen*, 466 U.S. 522, 541-42, 104 S. Ct. 1970, 1981, 80 L. Ed. 2d 565 (1984).

Nevertheless, simply because injunctive relief is available does not mean it

---

[3]The *Rooker-Feldman* doctrine is derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

is appropriate. In this case, Badillo's request for injunctive relief is not proper as to either Thorpe or Benefiel. "Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001) (internal quotations omitted) (alterations in original). Badillo does not seek to enjoin Thorpe or Benefiel from refusing to accommodate his disability in the future,[4] nor does he suggest that the defendants' alleged failure to do so is anything more than an isolated occurrence.[5] Because Badillo does not allege that he faces an immediate threat that Thorpe or Benefiel will again violate his rights, we discern no error in the district court's denial of injunctive relief under the ADA and RA.

To the extent that Badillo seeks to hold Benefiel personally liable, there is

---

[4]In his complaint, Badillo requests an order requiring the

> defendants to prepare and present a plan to this Court to affirmatively and publicly educate users of the Judicial System to assure that the 12% of the hard of hearing of the 42 million disabled people [sic] in our demotratic [sic] nation who work and pay taxes are participating in all legal daily activities so they may enjoy life and contribute to our prosperity and security.

[5]In fact, Badillo provides a document indicating that infrared assistive listening devices are available upon request.

5

no individual capacity liability under Title II of the ADA or RA. *See Garcia v. S.U.N.Y. Health Scis. Ctr. Of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001).

For these reasons, we affirm the district court's dismissal of Badillo's ADA and RA claims against Thorpe in her official and individual capacities, as well as the ADA and RA claims against Benefiel in his individual capacity.

## B. § 1983

### 1. Official Capacity Liability

In this case, Eleventh Amendment immunity applies to bar Badillo's claim for money damages and injunctive relief against Thorpe and Benefiel in their official capacities.[6] The Eleventh Amendment "protects a State from being sued in federal court without the State's consent." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003), *cert. denied*, 124 S.Ct. 1061 (2004).

*Manders* identified four factors to be considered in determining whether a defendant is an "arm of the state" for Eleventh Amendment purposes: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for

---

[6]By its own terms, the Eleventh Amendment affords states immunity from suits, both legal and equitable. *Ex Parte Young*, 209 U.S. 123 (1908), recognizes an exception "for suits against state officers seeking *prospective* equitable relief to end *continuing* violations of federal law." *Summit Medical Assocs, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (emphasis in original). However, as already noted, Badillo has made no allegations of an "ongoing and continuous violation."

judgments against the entity." *Manders*, 338 F.3d at 1309.

The first *Manders* factor addresses the manner in which the state defines the entity. Article V, Section 1 of the Florida Constitution provides, in part:

> The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts. No other courts may be established by the state, any political subdivision or any municipality. The legislature shall, by general law, divide the state into appellate court districts and judicial circuits following county lines.

Florida Statute § 26.01 divides the state into 20 judicial circuits. Additionally, Article V, Section 5 establishes the organization and jurisdiction of the circuit courts, and Article V, Section 8 sets forth the eligibility criteria for state judges, including circuit judges.

Florida Statute § 111.071(3) addresses the payment of judgments against certain public officers or employees and defines "agency of the state" or "state agency" as including the judicial branch. Further, Florida Statute § 25.382(1) provides that "'state courts system' means all officers, employees, and divisions of . . . circuit courts[.]"

Based upon the foregoing, it is clear that Florida circuit court judges are state officials and court administrators are part of the state courts system, which, as a component of the judicial branch, is a state agency. Thus, the first *Manders* factor weighs in favor of Eleventh Amendment immunity.

The second *Manders* factor asks what degree of control the state maintains over the entity. The State of Florida exercises substantial control over both circuit court judges and circuit court administrators. The Florida Constitution vests the Florida Supreme Court with the power to discipline or remove circuit judges for misconduct or unfitness. Fla. Const. Art. V, § 12(c). The Florida Legislature possesses impeachment authority over circuit judges "for misdemeanor in office." *Id.*, Art. III, § 17. The Governor fills judicial vacancies on the circuit court. *Id.*, Art. V, § 11. Additionally, the Florida Supreme Court further regulates circuit judges through the Florida Rules of Judicial Administration.

The State of Florida also exercises substantial control over state court administrators. As previously noted, the position of state court administrator was created pursuant to the general rulemaking authority of Florida's Supreme Court. In accordance with Florida Rule of Judicial Administration 2.050(d), state court administrators are appointed and terminated by the Chief Judge of the Circuit Court, a state officer. Benefiel's salary is paid exclusively by the State of Florida, he participates in the State's retirement fund, and the Chief Judge exclusively provides Benefiel with instructions for fulfilling his role as court administrator. Accordingly, the second *Manders* factor favors Eleventh Amendment immunity.

The third *Manders* factor asks from where the entity derives its funds.

8

Circuit court judges receive their salaries from the State of Florida. Fla. Const. Art. V, § 14(a); Fla. Stat. § 26.51. Benefiel likewise receives his salary from the State of Florida and participates in the state retirement system. Therefore, the third factor likewise favors Eleventh Amendment immunity.

The final *Manders* factor concerns who is responsible for judgments against the entity. "[T]he presence of a state treasury drain alone may trigger Eleventh Amendment immunity and make consideration of the other factors unnecessary." *Manders*, 338 F.3d at 1327 n.51.

In this case, the State would be responsible for paying any money judgment imposed against the defendants in their official capacities. Florida Statute § 284.30 established a "state self-insurance fund, designated as the 'State Risk Management Trust Fund,' . . . to provide insurance . . . for . . . federal civil rights actions under 42 U.S.C. § 1983 or similar federal statutes[.]" As previously noted, judges and administrators of the circuit court are state officials, and as such, they are covered by the State Risk Management Trust Fund. Therefore, it is clear that any money judgment entered against Thorpe or Benefiel would directly implicate the treasury of the State of Florida. This factor counsels heavily in favor of Eleventh Amendment immunity.

Based upon the application of the four *Manders* factors to this case, we

9

agree with the district court's conclusion that Thorpe and Benefiel are arms of the state for Eleventh Amendment purposes and therefore enjoy immunity from liability on Badillo's § 1983 claims, both legal and equitable.[7]

## 2. Individual Capacity Liability

To the extent that Badillo seeks to hold Thorpe and Benefiel individually liable under § 1983, "a plaintiff cannot maintain a section 1983 action in lieu of - or in addition to - a Rehabilitation Act or ADA cause of action if the only alleged deprivation is the [plaintiff's] rights created by the Rehabilitation Act and the ADA."[8] *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1531 (11th Cir. 1997). Therefore, we affirm the district court's dismissal of the § 1983 claims against Thorpe and Benefiel in their individual capacities.

## III. Grant of Summary Judgment on ADA and RA Claims against Benefiel

After the initial district court order granting Thorpe's and Benefiel's motions to dismiss, the only claims of Badillo's that remained were his ADA and RA claims against Benefiel in his official capacity. The district court subsequently granted Benefiel's motion to dismiss these claims.

---

[7]We note that the same conclusion was reached in *Santiago v. Garcia*, 70 F.Supp.2d 84, 90 (D.P.R. 1999), a case in which Badillo sued a trial judge and other territorial officials for the alleged failure to accommodate his hearing impairment during trial.

[8]Although *Holbrook* concerned an employee-plaintiff's claims against an employer, we believe the analysis applies with equal force to the facts of the instant case.

10

We review *de novo* a district court's order granting summary judgment, "applying the same legal standards as the district court." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated [against] by such entity; (3) by reason of such disability." *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (internal quotes omitted) (alterations in original). In order to recover compensatory damages under the RA, a plaintiff must demonstrate "intentional discrimination or bad faith." *Wood v. President & Trs. of Spring Hill Coll. in City of Mobile*, 978 F.2d 1214, 1219 (11th Cir. 1992). In other words, "good faith attempts to pursue

11

legitimate ends are not sufficient to support an award of compensatory damages under [the RA]." *Id.* With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable. *See, e.g., Cash v. Smith*, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000).

The facts of this case do not support a showing of intentional discrimination or bad faith. Badillo requested an interpreter, and one was provided. Badillo did not specify whether he required an oral interpreter or a sign language interpreter[9], and only at the hearing did he state that he relied upon an infrared assistive listening device. Benefiel acted reasonably in attempting to accommodate Badillo, particularly in light of the fact that he had no knowledge of Badillo's subsequent request for the infrared device. Therefore, we agree with the district court's finding that Benefiel did not intentionally discriminate against Badillo or act in bad faith, and we affirm the district court's grant of Benefiel's motion for summary judgment.

## IV. Conclusion

Upon review of the record and consideration of the parties' briefs, we

---

[9]It is puzzling that Badillo would have requested either type of interpreter, given his statement at the hearing that he does not understand sign language and his subsequent statement that he does not read lips.

discern no reversible error.  For the reasons stated above, we affirm.

**AFFIRMED.**