# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 13, 2025

Lyle W. Cayce
Clerk

No. 20-30237

Donna Laird,

*Plaintiff—Appellant*,

*versus*

Larry Spencer,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-299

Before King, Richman, and Engelhardt, *Circuit Judges*.

Per Curiam:*

Donna Laird appeals the district court's Rule 12(b)(6) dismissal, arguing that absolute judicial immunity does not bar her claims, brought under Title II of the Americans with Disabilities Act (ADA) and section 504 of the Rehabilitation Act (section 504), against Justice of the Peace Larry Spencer. Because Laird's claim for monetary damages is barred by judicial

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 20-30237

immunity, Laird lacks standing to obtain declaratory and injunctive relief, and Laird is not entitled to attorney's fees, we affirm.

## I

Laird is a hard-of-hearing individual who often requires auxiliary aids and services to ensure effective communication. In 2018, Laird received from her landlord a citation for an eviction proceeding to be held in Justice of the Peace Larry Spencer's court. Soon thereafter, Laird filed a written answer with Spencer. In her answer, Laird requested the provision of auxiliary aids to facilitate communication during the upcoming proceeding, asking Spencer to furnish either an oral interpreter or Communication Access Real-time Translation (CART) captioning services. In response, Spencer drafted and sent, via U.S. Mail, a reply letter denying Laird's request.

Later that month, the eviction proceeding took place in the Justice of the Peace Court. When the hearing began, Laird verbally objected to the fact that the requested aids had not been provided, and Spencer replied that he would write notes on a legal pad for Laird's benefit. During the hearing, Spencer wrote some notes, but much of the verbal communication was not transcribed. Moreover, Laird's landlord sat to her right, where her hearing is weakest. Laird avers that, as a result, she failed to understand much of the proceeding and was unable to participate fully and effectively. Ultimately, Spencer rendered judgment for Laird's landlord, resulting in her eviction.

Laird appealed, arguing, inter alia, that Spencer "violated [her] rights under the [ADA,] causing [her] not to be able to participate fully in the eviction hearing." Laird's appeal suspended the order of eviction,[1] and she

---

[1] *See* LA. CODE CIV. PROC. ANN. art. 4735.

2

No. 20-30237

received a de novo trial in the 19th Judicial District Court.[2] That court also rendered a judgment of eviction.

Laird subsequently filed this suit against Spencer in his official capacity, as well as the state of Louisiana, in the Middle District of Louisiana. She alleged violations of the ADA, section 504, and the Louisiana Interpreter's Law. Laird sought declaratory and injunctive relief, compensatory damages, and attorney's fees and costs. Roughly one year later, Laird voluntarily dismissed her claims against Louisiana. Spencer filed a motion to dismiss pursuant to Rule 12(b)(6), asserting that absolute judicial immunity barred Laird's claims against him. The district court granted the motion and entered judgment for Spencer. Laird timely appealed.

## II

To survive Spencer's Rule 12(b)(6) motion to dismiss, Laird "must plead enough facts to state a claim for relief that is plausible on its face."[3] We review de novo the district court's dismissal, accepting the complaint's well-pleaded facts as true and viewing all facts in the light most favorable to Laird.[4] Laird does not challenge the district court's conclusion that absolute judicial immunity bars her Louisiana Interpreter's Law claim.[5] We therefore address only her claims under the ADA and section 504.[6]

---

[2] *See id.* art. 4924(A)-(B).

[3] *Warren v. Chesapeake Expl., L.L.C.*, 759 F.3d 413, 415 (5th Cir. 2014); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *See Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014), *abrogated on other grounds by Hamilton v. Dallas County*, 79 F.4th 494 (5th Cir. 2023) (en banc).

[5] *See generally* La. Stat. Ann. §§ 46:2361-72.

[6] *See Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019) ("Generally speaking, a [party] waives an issue if he fails to adequately brief it." (quoting *United States v. Martinez*, 263 F.3d 436, 438 (5th Cir. 2001))); *see also* Fed. R. App. P. 28(a)(5),

3

No. 20-30237

First, we address Laird's threshold argument that absolute judicial immunity is a personal defense inapplicable to official-capacity claims. As Laird correctly notes, in *Kentucky v. Graham*,[7] the Supreme Court observed a distinction between personal-capacity suits—in which defendants may assert personal immunity defenses—and official-capacity suits—in which personal defenses are unavailable, and the only potential immunities are forms of sovereign immunity.[8] Accordingly, this court has held that absolute immunities are personal defenses inapplicable to official-capacity actions.[9] But these decisions interpreted liability under the distinct statutory scheme of § 1983. Neither this court nor the Supreme Court has extended the principle that absolute judicial immunity applies only in personal-capacity actions to suits brought under the ADA or section 504. We decline to do so here.

Notably, § 1983 provides a cause of action against "[e]very *person*" who deprives another of rights or privileges secured by federal law.[10] Because "a State is not a person" amenable to suit under § 1983,[11] plaintiffs use the workaround of official-capacity suits against state officials, which are "in all

---

(a)(8)(A) (explaining that an appellant's brief must contain "a statement of the issues presented for review" and, within the argument, the "appellant's contentions and the reasons for them").

[7] 473 U.S. 159 (1985).

[8] *See id.* at 165-67.

[9] *See Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (explaining that "defenses such as absolute quasi-judicial immunity, that only protect defendants in their individual capacities, are unavailable in official-capacity [§ 1983] suits"); *Johnson v. Kegans*, 870 F.2d 992, 998 n.5 (5th Cir. 1989) ("[Absolute i]mmunity does not bar suits against defendants in their official capacities.").

[10] 42 U.S.C. § 1983 (emphasis added).

[11] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

respects other than name . . . treated as . . . suit[s] against the [state or state] entity."[12]   Section 1983 plaintiffs may also elect to sue officials in their personal capacity, "seek[ing] to impose personal liability upon . . . official[s] for actions . . . take[n] under color of state law."[13]   Thus, *Kentucky v. Graham*'s distinction between personal-capacity and official-capacity suits is tethered to § 1983's language and unique statutory framework, which permits plaintiffs to sue "persons" in multiple capacities.[14]

Suits brought under the ADA and section 504 require no such distinction.  Title II of the ADA provides that qualified disabled individuals may not be excluded from "the benefits of the services, programs, or activities of a public entity" because of their disability.[15]   Likewise, section 504 declares that no qualified disabled individual may "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[16]   These statutes regulate public entities, programs, and activities—not "persons."   Thus, unlike § 1983, the ADA and section 504 do not permit personal-capacity suits against government officials.[17]   Put differently,

---

[12] *Graham*, 473 U.S. at 166.

[13] *Id.* at 165.

[14] *Cf. City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("Aware that governmental bodies can act only through natural persons, the Court [in *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978)] concluded that [local] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

[15] 42 U.S.C. § 12132.

[16] 29 U.S.C. § 794(a).

[17] *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a.  *Compare Smith v. Hood*, 900 F.3d 180, 184 n.6 (5th Cir. 2018) (noting that "the ADA cannot be assessed against an individual"), *Hay v. Thaler*, 470 F. App'x 411, 417-18 & n.19 (5th Cir. 2012) (per curiam) (unpublished) (affirming dismissal of ADA and section 504 claims against defendants in their individual

plaintiffs suing government officials under the ADA and section 504 must *necessarily* pursue official-capacity claims, whereas § 1983 plaintiffs may elect to sue officials in either their individual *or* official capacities (or, often, both). Given this significant difference, it makes little sense to import the conclusion that personal immunity defenses do not apply in official-capacity actions from our § 1983 jurisprudence to the present claims. Indeed, several other circuits have upheld judicial immunity in official-capacity actions outside the context of § 1983.[18]

---

capacities), *and Lollar v. Baker*, 196 F.3d 603, 609 & n.6 (5th Cir. 1999) (holding that government officials may not be sued in their individual capacities under section 504), *with Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) ("Claims under § 1983 may be brought against persons in their individual or official capacity . . . .").

[18] *See, e.g.*, *Duvall v. County of Kitsap*, 260 F.3d 1124, 1133 & n.5 (9th Cir. 2001) (applying absolute judicial immunity in an official capacity action under the ADA and section 504); *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (per curiam) (unpublished) (extending absolute judicial immunity to a judge sued in her official and individual capacities under the ADA and section 504); *Lloyd v. Doherty*, No. 18-3552, 2018 WL 6584288, at *1, *5 (6th Cir. Nov. 27, 2018) (unpublished) (concluding that absolute judicial immunity barred claims against judges sued in their individual and official capacities for money damages under the ADA and section 504); *see also Kaul v. Christie*, 372 F. Supp. 3d 206, 246 (D.N.J. 2019) (stating that "[a]bsolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts"); *Livingston v. Guice*, 68 F.3d 460, No. 94-1915, 1995 WL 610355, at *3-4 (4th Cir. 1995) (unpublished table decision) (holding that a judge sued in his official capacity under the ADA was not entitled to absolute immunity in a suit pursuing only declaratory and injunctive relief, but implying that such immunity would apply were the suit to seek damages). *But see Marks v. Tennessee*, 562 F. App'x 341, 344 n.2 (6th Cir. 2014) (unpublished) (stating in dicta that "[t]he judicial immunity doctrine does not appear to apply, because that doctrine typically only forbids damages suits against judges . . . who are sued in their individual capacity"); *Prakel v. Indiana*, 100 F. Supp. 3d 661, 677-78 (S.D. Ind. 2015) (concluding that absolute judicial immunity did not shield judges sued in their official capacities under the ADA and section 504).

No. 20-30237

We conclude, therefore, that Spencer may assert absolute judicial immunity as a defense to Laird's official-capacity suit brought under the ADA and section 504.

## III

Having determined that absolute judicial immunity applies generally to official-capacity suits alleging violations of the ADA and section 504, we now examine whether such immunity applies to Spencer's conduct here. We conclude that it does.

Absolute judicial immunity is broad but not unlimited.[19] As Laird recognizes, for purposes of immunity, there is "an intelligible distinction between judicial acts and the administrative, legislative, or executive functions that judges may on occasion be assigned by law to perform."[20] Accordingly, the application of judicial immunity turns on whether the challenged conduct is a judicial action, and whether the judge acted within the bounds of jurisdiction.[21] In other words, "[a]bsolute judicial immunity extends to all judicial acts that are not performed in the clear absence of all jurisdiction."[22] The parties do not dispute that Spencer possessed jurisdiction over Laird's eviction proceeding; therefore, the relevant inquiry is whether Spencer's denial of the auxiliary aids requested by Laird during that proceeding is a judicial act.

---

[19] *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam) (noting that "the immunity is overcome in only two sets of circumstances").

[20] *Forrester v. White*, 484 U.S. 219, 227 (1988).

[21] *See Mireles*, 502 U.S. at 11-12.

[22] *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

No. 20-30237

When determining whether an act is "judicial in nature," this court considers four factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.[23]

We "broadly construe[]" these criteria "in favor of immunity," and we may extend immunity "even though one or more of the . . . factors is not met."[24]

## A

Regarding the first factor, Laird asserts that Spencer's denial of auxiliary aids was an administrative task, not a normal judicial function. While there is little Fifth Circuit precedent on point, our sister circuits have addressed similar scenarios, and we find their analysis persuasive.

In *Duvall v. County of Kitsap*,[25] the most analogous decision, the Ninth Circuit examined a claim that a judge had failed to accommodate a litigant's hearing impairment during court proceedings, thereby violating the ADA and section 504.[26] In that case, a partially deaf plaintiff contacted the county's ADA coordinator prior to trial and requested that videotext display be utilized.[27] The ADA coordinator explained that the trial courtroom

---

[23] *Id.* (citing *McAlester v. Brown*, 469 F.2d 1280, 1282 (5th Cir. 1972)).

[24] *Id.*

[25] 260 F.3d 1124 (9th Cir. 2001).

[26] *Id.* at 1129.

[27] *Id.* at 1130-31.

would be equipped for the hearing impaired, and that the plaintiff could file a motion with the court requesting a specific accommodation.[28]  When the plaintiff appeared at trial, however, he learned that the courtroom lacked videotext display capability and subsequently brought a motion seeking the technology's implementation, which the judge denied.[29]  At a post-trial hearing, the plaintiff moved for a mistrial, which the judge denied as well.[30]  On appeal, the Ninth Circuit held that the judge was entitled to judicial immunity for his refusal to accommodate the plaintiff.[31]  The court reasoned that "[r]uling on a motion is a normal judicial function, as is exercising control over the courtroom while court is in session."[32]

The Ninth Circuit is not the only court of appeals to apply absolute judicial immunity to a judge's refusal to provide auxiliary aids and services. In *Badillo v. Thorpe*,[33] an unpublished decision, the Eleventh Circuit held that such immunity shielded a judge who, during a court proceeding, rejected a hearing-impaired plaintiff's request for specific assistive technology.[34] There, as in *Duvall*, the plaintiff first contacted a court administrator seeking accommodations, then repeated the request to the judge at his hearing.[35]

In the present case, whether Spencer engaged in a normal judicial function when denying Laird's request for auxiliary aids requires the analysis

---

[28] *Id.* at 1131.

[29] *Id.*

[30] *Id.* at 1132.

[31] *Id.* at 1133.

[32] *Id.*

[33] 158 F. App'x 208 (11th Cir. 2005) (per curiam) (unpublished).

[34] *Id.* at 210-11.

[35] *Id.* at 210.

of two separate acts: (1) his written reply to Laird's answer, and (2) his in-court verbal refusal to provide Laird's desired accommodation. The latter, which entails "exercising control over the courtroom while court is in session," is plainly an ordinary judicial activity.[36] The former, however, is less clear. Unlike *Duvall* and *Badillo*, in which the plaintiffs first contacted court administrators to request accommodations, and both judges were unaware of the plaintiffs' requests before trial,[37] Spencer was Laird's sole contact with the court. Further, Spencer's written reply to Laird's initial request for auxiliary aids was not an in-court ruling,[38] but a letter sent via U.S. Mail. Ultimately, though, this court construes "broadly . . . in favor of immunity" the four factors governing whether an act is judicial in nature.[39] As a written response to a formal court filing, Spencer's letter is akin to "[r]uling on a motion," a routine judicial task.[40]

Accordingly, we conclude that Spencer's denial of auxiliary aids, both in writing and during the eviction proceeding, constitutes a normal judicial function, thus favoring the extension of judicial immunity.

**B**

The remaining factors also point toward the extension of judicial immunity. As to factor two, Spencer's denial of auxiliary aids "occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers."[41] Spencer's verbal denial of auxiliary aids took place in open

---

[36] *Duvall*, 260 F.3d at 1133; *see also Badillo*, 158 F. App'x at 210-11.

[37] *See Duvall*, 260 F.3d at 1130-31; *Badillo*, 158 F. App'x at 210.

[38] *See Duvall*, 260 F.3d at 1131-32; *Badillo*, 158 F. App'x at 210.

[39] *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

[40] *Duvall*, 260 F.3d at 1133.

[41] *Malina*, 994 F.2d at 1124.

court.  Laird contends that Spencer's written denial did not occur in an appropriate space but alleges no facts to support this conclusory assertion. Indeed, Laird appeared to concede this point before the district court by arguing that "leniency should be extended" regarding this factor.

Regarding factor three, Spencer refused to provide Laird accommodations during eviction proceedings, so the resulting "controversy centered around a case pending before [Spencer's] court."[42]  Finally, concerning factor four, "the acts arose directly out of a visit to the judge in his official capacity."[43]  Spencer's verbal denial took place in the courtroom. While the written denial did not follow Laird's physical appearance in Spencer's court or chambers, it did respond directly to Laird's answer, a court filing made in anticipation of the upcoming eviction proceeding. Broadly construed,[44] Laird's answer is akin to a judicial visit.

In sum, our four-factor test indicates that Spencer's conduct was judicial in nature and is thus protected by absolute judicial immunity.

## C

In so holding, we emphasize the alternative forms of redress that Laird could, and did, take advantage of.  The cases that established absolute judicial immunity "recognized that the immunity was designed to further the public interest in an independent judiciary, sometimes at the expense of legitimate individual grievances," but "accepted those costs to aggrieved individuals

---

[42] *Id.*

[43] *Id.*

[44] *See id.*

No. 20-30237

because the judicial system itself provided other means for protecting individual rights."[45]

Louisiana provides several such "alternative forums and methods for vindicating those rights."[46] Louisiana law provides that upon an "[a]ppeal from a judgment rendered by a justice of the peace court," the "case is tried de novo on appeal" in the parish court or "the district court of the parish in which the justice of the peace court is situated."[47] Appeals brought within twenty-four hours and accompanied by an appeal bond will "suspend execution of a judgment of eviction."[48] Moreover, "[s]upervisory jurisdiction of the proceedings in the parish or district court may be exercised by the court of appeal which otherwise would have had appellate jurisdiction."[49] Louisiana also maintains a Judiciary Commission charged with receiving complaints and conducting investigations of judicial misconduct,[50] including violations of the Code of Judicial Conduct, which requires judges to "perform judicial duties without bias or prejudice" and "make reasonable efforts, consistent with the law . . . to facilitate the abilities of all litigants . . . to be fairly heard."[51]

Despite the application of judicial immunity to her present claim, Laird was not bereft of options for challenging her eviction proceeding and

---

[45] *Stump v. Sparkman*, 435 U.S. 349, 369 (1978) (POWELL, J., dissenting) (first citing *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 349, 354 (1871); and then citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967)).

[46] *Id.* at 370.

[47] LA. CODE CIV. PROC. ANN. art. 4924(A)-(B).

[48] *Id.* art. 4735.

[49] *Id.* art. 4924(D).

[50] *See* LA. CONST. ANN. art. 5, § 25; LA. SUP. CT. R. XXIII, § 3(a)(1).

[51] LA. CODE OF JUDICIAL CONDUCT Canon 3(A)(4).

vindicating her rights. The remedy of appeal was available not just in theory, but also in practice. Here, Laird appealed Spencer's order of eviction to the 19th Judicial District Court. She specifically raised the argument that Spencer violated her rights under the ADA by refusing to accommodate her such that she was unable to participate effectively in the eviction hearing, and she received a de novo trial.

## D

Next, we briefly address Laird's arguments that our judicial immunity jurisprudence "does not mesh well" with Supreme Court precedent. Laird contends that this court's case law, which favors the extension of immunity by construing broadly the relevant analytical framework, clashes with *Forrester v. White*.[52] Under that decision, Laird asserts, "judges who seek absolute immunity for a non-judicial function *have the burden* of showing that the exemption [from] liability is justified by overriding considerations of public policy."[53] But the portion of *Forrester* that Laird cites discusses the evolution of official immunity generally, not judicial immunity specifically,[54] and the opinion goes on to acknowledge that "we cannot pretend that we are writing on a clean slate or that we should ignore compelling reasons that may well justify broader protections for judges than for some other officials."[55]

---

[52] 484 U.S. 219 (1988).

[53] *See id.* at 224 (describing the Supreme Court's "'functional' approach to immunity questions," which "examine[s] the nature of the functions with which a particular official . . . has been lawfully entrusted," "evaluate[s] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions," and counsels that "[o]fficials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy").

[54] *See id.*

[55] *Id.* at 226.

Ultimately, *Forrester* recognizes a dichotomy between judicial acts, which immunity shields, and administrative, legislative, or executive acts, to which immunity does not apply.[56]   The Fifth Circuit's approach to judicial immunity is consistent with *Forrester*.  The point of our four-factor analysis is to determine whether the challenged conduct is "judicial in nature," and the first factor explicitly considers whether the judge was performing "a normal judicial function."[57]

Further, *Forrester* is not the final word on absolute judicial immunity; subsequent cases have further developed and refined the doctrine.  In *Mireles v. Waco*,[58] for example, the Supreme Court observed that

> our cases make clear that [judicial] immunity is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial actions . . . .  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.[59]

This court's framework for assessing judicial immunity directly follows *Mireles*.[60]

## IV

Finally, we address the application of absolute judicial immunity to the various types of relief sought.  Laird contends that even if Spencer's denial of auxiliary aids and services was a judicial act shielded by absolute

---

[56] *Id.* at 227.

[57] *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993).

[58] 502 U.S. 9 (1991) (per curiam).

[59] *Id.* at 11-12 (first citing *Forrester*, 484 U.S. at 227-29; and then citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)).

[60] *See Malina*, 994 F.2d at 1124 ("Absolute judicial immunity extends to all judicial acts that are not performed in the clear absence of all jurisdiction.").

immunity, such immunity applies only to the claim for monetary damages and does not bar the claims seeking prospective relief and attorney's fees. We conclude, however, that Laird lacks standing to pursue declaratory and injunctive relief, and she is not entitled to attorney's fees.

## A

First, regarding her request for an injunction and a declaratory judgment, Laird submits that *Bauer v. Texas*[61] permits such relief. In *Bauer*, this court observed that "[a]bsolute judicial immunity . . . does not bar prospective relief against a judicial officer."[62] A number of our recent § 1983 cases, albeit unpublished, have reaffirmed this statement,[63] and several other courts of appeals have extended the principle to ADA and section 504 actions.[64]

But our analysis does not end here. Even assuming arguendo that absolute judicial immunity does not bar Laird's claims for injunctive and

---

[61] 341 F.3d 352 (5th Cir. 2003).

[62] *Id.* at 357 (citing *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984)).

[63] *See, e.g.*, *Norman v. Tex. Ct. of Crim. Appeals*, 582 F. App'x 430, 431 (5th Cir. 2014) (per curiam) (unpublished) ("[J]udicial immunity does not bar claims for injunctive or declaratory relief in § 1983 actions."); *LaBranche v. Becnel*, 559 F. App'x 290, 290 (5th Cir. 2014) (per curiam) (unpublished) ("[J]udicial immunity does not bar claims for injunctive or declaratory relief in civil rights actions . . . ."); *Severin v. Parish of Jefferson*, 357 F. App'x 601, 605 (5th Cir. 2009) (per curiam) (unpublished) ("[J]udicial immunity does not bar declaratory relief . . . .").

[64] *See, e.g.*, *Badillo v. Thorpe*, 158 F. App'x 208, 211 (11th Cir. 2005) (per curiam) (unpublished) (observing that the plaintiff's "claim for money damages against [the judge] based upon the ADA and [Rehabilitation Act] is barred by the doctrine of absolute judicial immunity," but that "judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity" (quoting *Pulliam*, 466 U.S. at 541-42)); *Livingston v. Guice*, 68 F.3d 460, No. 94-1915, 1995 WL 610355, at *4 (4th Cir. 1995) (unpublished table decision) (concluding that "[w]ith [the plaintiff] only seeking injunctive

declaratory relief, Laird must nonetheless have standing to pursue these claims, as Spencer correctly notes.[65] While Spencer did not raise the issue of standing before the district court, Article III standing is an "essential component[] of federal subject-matter jurisdiction."[66] This court has "a continuing obligation to examine the basis for [its] jurisdiction" such that standing concerns "may be raised by parties, or by the court *sua sponte*, at any time."[67]

> To demonstrate Article III standing,
>
> a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[68]

When "seeking injunctive or declaratory relief, a plaintiff must allege facts" evincing "a substantial and continuing controversy between two adverse parties . . . [that is] real and immediate, and create[s] a definite, rather than speculative threat of future injury."[69] "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any

---

and declaratory relief against [the judge], there is no basis for affording the judge absolute immunity").

[65] *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing separately for each form of relief sought." (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000))).

[66] *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005) (per curiam).

[67] *MCG, Inc. v. Great W. Energy Corp.*, 896 F.2d 170, 173 (5th Cir. 1990).

[68] *Laidlaw*, 528 U.S. at 180-81 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[69] *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003).

continuing, present adverse effects."[70]  Rather, "[t]o obtain [declaratory or injunctive] relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."[71]

Laird seeks equitable relief to remedy Spencer's past violation of the ADA and section 504.  She asserts no continuing harm from the alleged violation.  Nor does she demonstrate a non-speculative threat of future injury.  The complaint states that

> as a resident of East Baton Rouge Parish, [Laird] may foreseeably have to appear before . . . Spencer in the future[,] and this possibility generates significant fear and distress for [her] due to the discrimination she faced and expects to face in the future if she has to return to . . . Spencer's court.

The complaint goes on to state that "absent injunctive relief, there is a clear risk that [Spencer's] actions will recur with [Laird] and/or additional deaf patients or companions [sic]."  Such conjecture does not establish the requisite threat of future harm.[72]

We conclude, therefore, that even if absolute judicial immunity does not bar Laird's claims for declaratory and injunctive relief, Laird lacks standing to pursue these remedies.  "[T]he danger that excessive superintending of state judicial functions 'would constitute a form of

---

[70] *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

[71] *Id.*

[72] *See id.* ("This court has often held that plaintiffs lack standing to seek prospective relief against judges where the likelihood of future encounters is speculative.").

No. 20-30237

monitoring of the operation of state court functions that is antipathetic to established principles of comity'" bolsters our conclusion.[73]

## B

All that is left is Laird's claim for attorney's fees. Laird contends that absolute judicial immunity does not bar a grant of attorney's fees under the ADA and section 504. But because Laird's underlying claims were properly dismissed, she is not a "prevailing party" to whom attorney's fees may be awarded.[74] This form of relief is equally unavailable to Laird.

\*    \*    \*

For the foregoing reasons, we AFFIRM the district court's Rule 12(b)(6) dismissal.

---

[73] *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 501 (1974)).

[74] *See Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 576 (5th Cir. 2018) (noting that to be considered a prevailing party entitled to attorney's fees under the ADA, a party must, among other things, "achieve judicially-sanctioned relief" (quoting *Davis v. Abbott*, 781 F.3d 207, 214 (5th Cir 2015)); *Teresa Diane P. v. Alief Indep. Sch. Dist.*, 744 F.2d 484, 488 (5th Cir. 1984) ("A party 'prevails' within the meaning of [the Rehabilitation Act] if his or her lawsuit is a substantial factor or significant catalyst in achieving the primary relief sought.").